LEONARD RAY BLANTON AND BETTY BLANTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2007-85.          Filed March 22, 1990.

*D. Bruce Shine,* for the petitioners.
*Vallie C. Brooks,* for the respondent.

OPINION

WHITAKER, *Judge:* This case is presently before the Court on respondent's motion for partial summary judgment. See Rule 121(b).[1] By statutory notice dated October 29, 1984, respondent determined a deficiency in the amount of $10,078.40 in petitioners' Federal income tax for the year 1978, and an addition to tax in the amount of $7,586.10

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

pursuant to section 6653(b). Respondent's determination reflects, inter alia, an item of unreported income in the amount of $23,334.50. Respondent seeks summary judgment on the issue of whether petitioner Leonard Ray Blanton is collaterally estopped from denying that he received that amount under circumstances which constituted a violation of the Hobbs Act[2] and a conspiracy to violate the Hobbs Act.

At the time their petition was filed, petitioners resided in Adamsville, Tennessee. All further references to petitioner are to Leonard Ray Blanton.

In March 1981, a Federal grand jury in the Middle District of Tennessee returned a 13-count superseding indictment[3] against petitioner and two other defendants, Clyde Edward Hood, Jr., and James M. Allen. The first 11 counts charged all three defendants with conspiracy, mail fraud, and violation of the Hobbs Act. The last two counts charged petitioner alone with income tax evasion and filing a false tax return. The District Court severed the two tax counts from the other 11 counts and subsequently dismissed those counts upon motion by the United States.

Petitioner entered a plea of not guilty to the charges set forth against him in the indictment. A trial commenced thereafter, and on June 9, 1981, the jury found petitioner guilty on counts one through eleven. A judgment was entered pursuant to the verdict on August 14, 1981.[4] With respect to each count, the District Court sentenced petitioner to a concurrent 3-year prison term and fined him $1,000.

On appeal, a three-judge panel of the U.S. Court of Appeals for the Sixth Circuit reversed the judgment of the District Court and remanded the case for further proceedings. *United States v. Blanton,* 700 F.2d 298 (6th Cir. 1983). Upon rehearing en banc, however, the Court of Appeals

---

[2] 18 U.S.C. sec. 1951 (1976) is commonly known as the "Hobbs Act." The Hobbs Act proscribes a number of offenses which obstruct, delay, or affect interstate commerce, including robbery, extortion, attempted robbery or extortion, and conspiracy to commit robbery or extortion.

[3] The grand jury originally returned a 12-count indictment on Oct. 29, 1980.

[4] The court dismissed three mail fraud counts and the Hobbs Act count as to Mr. Allen. The jury found him guilty on the other seven counts (six mail fraud counts and the conspiracy count). It found Mr. Hood guilty on six mail fraud counts and the conspiracy count, but it found him not guilty on the other three mail fraud counts and the Hobbs Act count.

affirmed the District Court's judgment. *United States v. Blanton*, 719 F.2d 815 (6th Cir. 1983). When the U.S. Supreme Court denied certiorari on March 19, 1984, petitioner's conviction became final. *Blanton v. United States*, 465 U.S. 1099 (1984).

On June 24, 1987, the Supreme Court rendered its decision in the case of *McNally v. United States*, 483 U.S. 350 (1987), wherein it held that mail fraud prohibits only schemes intended to deprive victims of property such as money and not schemes depriving victims of intangible rights such as the right to honest government. Based on that decision, all three defendants moved to have their convictions set aside in a habeas corpus proceeding. On January 27, 1988, the U.S. District Court for the Middle District of Tennessee issued a memorandum opinion in which it applied the *McNally* decision retroactively and held that the defendants were entitled to have their mail fraud and conspiracy to commit mail fraud convictions dismissed. However, the District Court left petitioner's conviction on the Hobbs Act count and the conspiracy count, which charged a conspiracy to violate the Hobbs Act, undisturbed. Both petitioner and the United States subsequently filed an appeal. However, upon consideration of the parties' joint motion to dismiss, the Court of Appeals for the Sixth Circuit dismissed the cross appeals pursuant to an order dated November 17, 1988.

On August 10, 1987, respondent filed his motion for partial summary judgment. Petitioner filed his objection to respondent's motion together with a supporting memorandum on August 28, 1987. Respondent filed a memorandum in support of his motion on September 15, 1987. We subsequently requested that each party file a supplemental brief reflecting the effect, if any, of the final resolution of the habeas corpus proceeding on their positions with respect to respondent's motion. Respondent filed his supplemental brief on July 10, 1989. By order dated August 4, 1989, we reminded petitioner of our informal request for a supplemental brief and ordered that the request be complied with by August 18, 1989, or he would be precluded from filing such a brief. Petitioner failed to file a supplemental brief within the time allowed or at any time thereafter.

Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." See *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). The burden of proof is on the moving party, *Naftel v. Commissioner, supra; Espinoza v. Commissioner, supra,* and we are required to view the factual material and inferences drawn therefrom in the light most favorable to the party opposing the motion. *Naftel v. Commissioner, supra; Jacklin v. Commissioner, supra.* In this case, no dispute exists as to any material fact. The collateral estoppel issue presented here is legal; therefore, that issue may properly be resolved on respondent's motion for partial summary judgment.

Respondent argues that the doctrine of collateral estoppel precludes petitioner from denying that he received $23,334.50 in 1978 under circumstances which constituted a violation of the Hobbs Act and a conspiracy to violate the Hobbs Act. Petitioner challenges respondent's theory of collateral estoppel only insofar as it hinges upon the mail fraud counts which have been dismissed. In his supplemental brief, however, respondent argues that his theory of collateral estoppel applies, notwithstanding dismissal of the mail fraud counts against petitioner. We agree with respondent.

Collateral estoppel prevents a party from relitigating an issue that that party previously litigated unsuccessfully in a different action. *Meier v. Commissioner*, 91 T.C. 273, 283 (1988). Under the doctrine of collateral estoppel,[5] the judgment in the prior suit precludes litigation in a subsequent suit with respect to an issue actually litigated and necessary to the outcome of the first action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979). A previously litigated issue which is the subject of a valid

---

[5]The Restatement defines the doctrine in the following manner:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. [1 Restatement, Judgments 2d, sec. 27 (1982).]

final judgment cannot be litigated thereafter in a suit between the parties or their privies. *Peck v. Commissioner,* 90 T.C. 162, 166 (1988); *Gammill v. Commissioner,* 62 T.C. 607, 613-614 (1974). Collateral estoppel operates with respect to issues of fact, issues of law, and mixed issues of fact and law. *Meier v. Commissioner, supra* at 283. Collateral estoppel "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate [and] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153-154 (1979). (Fn. ref. omitted.)

In *Montana v. United States, supra* at 155, the Supreme Court set forth a three-pronged test to be used for determining the applicability of the doctrine of collateral estoppel. We utilize that same test, which requires inquiry into the following areas:

First, whether the issues presented in the subsequent litigation are in substance the same as those in the first case; second, whether controlling facts or legal principles have changed significantly since the first judgment; and third, whether other special circumstances warrant an exception to the normal rules of preclusion. * * * [*Meier v. Commissioner, supra* at 283.]

## 1. Identity of Issues

Although petitioner's tax liability was not adjudicated in the prior proceeding, respondent in effect argues that the same factual predicate underlies his determination of unreported income in the amount of $23,334.50 and petitioner's conviction on one count of violating the Hobbs Act and one count of conspiracy to violate the Hobbs Act. Thus, we must decide whether petitioner is collaterally estopped from denying the facts which support his conviction on those counts.

Generally, a factual finding which was necessary to support the judgment in a prior proceeding will preclude relitigation of that issue in a subsequent proceeding. However, collateral estoppel applies only if the issue sought to be precluded was actually determined and necessarily

decided in a prior proceeding in which the litigant against whom the doctrine is asserted had a full and fair opportunity to litigate the issue. See *Montana v. United States, supra* at 153; *Parklane Hosiery Co. v. Shore, supra* at 326. A factual issue is "necessarily decided" if determination of such issue was necessary to support the judgment entered in the prior proceeding. *National Labor Relations Board v. Master Slack and/or Master Trousers Corp.,* 773 F.2d 77, 81 (6th Cir. 1985).

In the case of a criminal conviction based on a jury verdict of guilty, issues essential to that verdict are regarded as having been determined by the judgment. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569 (1951). It is difficult in most cases, however, to ascertain from a jury's general verdict exactly what facts were found as a predicate to that verdict. Thus, an examination of the record of the prior proceeding, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts, might be required in order to determine what issues were adjudicated. *Emich Motors Corp. v. General Motors Corp., supra; Sealfon v. United States,* 332 U.S. 575, 579 (1948). What issues were adjudicated in the prior proceeding is, of course, a question of law. *Emich Motors Corp. v. General Motors Corp., supra* at 571.

The essence of the Hobbs Act count is that defendants in the prior proceeding used their positions to see that a particular person received two retail liquor licenses from the Tennessee Alcoholic Beverage Commission, and that that person paid petitioner for receipt of his licenses. Specifically, count 11 of the indictment stated in pertinent part as follows:

Beginning in early 1975, up to and including December 4, 1978, in the Middle District of Tennessee and elsewhere, LEONARD RAY BLANTON, CLYDE EDWARD HOOD, JR., and JAMES M. ALLEN, defendants herein, unlawfully, willfully, and knowingly did obstruct, delay and affect, and did attempt to obstruct, delay and affect, interstate commerce and the movement of articles and commodities in interstate commerce, that is liquor and wine, by extortion, in that the defendant LEONARD RAY BLANTON, in his position as Governor of the State of Tennessee, and CLYDE EDWARD HOOD, JR., in his position as Special Assistant to the Governor of the State of Tennessee, and aided and

abetted by JAMES M. ALLEN, who until June 1975 was Special Consultant to the Governor of the State of Tennessee, did obtain and attempt to obtain property, that is approximately $23,334.50, which represented twenty percent (20%) of the profits of a retail liquor store, from Jack Ham, owner of Donelson Pike Liquors, with his consent, such consent being induced through fear of economic loss and under color of official right.

In violation of Title 18, United States Code, Section 1951 and 2.

Although the essence of the Hobbs Act count is not apparent from the language of the indictment itself, the District Court's charge to the jury with respect thereto leaves no doubt as to the factual predicate underlying the jury's conviction of petitioner on that count.

Initially, the District Court charged the jury in pertinent part as follows:

Now, Members of the Jury, the Government contends that the Defendants Blanton and Hood committed an offense under the Hobbs Act in the following manner:

The Government contends that Jack Ham, with the help of the Defendant Hood, obtained a commitment from the Defendant Blanton whereby in return for the Defendant Blanton's obtaining two liquor licenses for Ham for operation of two stores in Nashville, Blanton would receive 20 percent of the profits of the stores.

The Government contends in count 11 that the Hobbs Act count was completed when Ham paid the bank in Blanton's behalf the sum of $23,334.50 and Ham thereby became the owner of part of Blanton's interest in the oil exploration partnership. The Government contends that such payment by Ham was actually made by Ham and received by Blanton in satisfaction of Ham's obligation to pay Blanton 20 percent of the profits of the Donelson Pike Liquors.

\* \* \* \* \* \* \*

The Defendants Blanton and Hood deny that Blanton had any such agreement with Ham, deny that Hood helped Ham to obtain any such agreement, and deny that Ham's purchase of the oil interest was in reality a satisfaction of an agreement by Ham to pay 20 percent of the profits of Donelson Pike Liquors as a bribe to the Defendant Blanton as the Government contends.

Subsequently, the members of the jury passed a note to the trial judge which read as follows: "To be convicted under the Hobbs Act, must money actually change hands, or is intent sufficient?" In response to the jury, the trial judge reread the above-quoted part of the charge and read an additional charge as follows:

Accordingly, you can find the Defendants Blanton and Hood guilty of the Hobbs Act charge in Count 11 if and only if you find beyond a reasonable doubt that when Jack Ham paid the bank $23,334.50 in satisfaction of a loan to Blanton, and Ham acquired Blanton's interest in the oil partnership, this amount was paid by Ham and understood by Blanton to be in satisfaction of an obligation to pay Blanton 20 percent of the profits of Donelson Pike Liquors and for no other purpose.

The issue in this case which respondent seeks to foreclose from consideration under the doctrine of collateral estoppel is substantially the same in the sense that the amount of unreported income in question and the amount petitioner purportedly received in violation of the Hobbs Act are identical. Petitioner concedes that Mr. Ham transferred funds in the amount of $23,334.50 to him in 1978, albeit indirectly by paying off an outstanding note, but he denies that that amount was received under circumstances which constituted a violation of the Hobbs Act. However, the issue of whether petitioner received the amount in question under circumstances which constituted a violation of the Hobbs Act was actually litigated and necessary to the outcome of the first action. Thus, we conclude that the first prong of the collateral estoppel test has been satisfied.

2. Changes in Controlling Law or Facts

The second prong of the test requires consideration of whether significant changes have occurred in the controlling facts or legal principles since the first action. Neither party contends that any such changes have occurred with respect to the controlling facts, nor are we aware of any such changes. Likewise, no changes have occurred with respect to the legal principles underlying petitioner's conviction on the Hobbs Act count. In the absence of change, we conclude that the second prong of the collateral estoppel test has been satisfied.

3. Special Circumstances

Petitioner has not presented any circumstances which would warrant an exception to the normal rules of preclusion, nor are we aware of any such circumstances. Thus, we conclude that the third prong of the collateral estoppel test has been satisfied.

Based on the foregoing, we hold that petitioner is collaterally estopped from denying that he received $23,334.50 in 1978 under circumstances which constituted a violation of the Hobbs Act.[6] Accordingly, respondent's motion for partial summary judgment will be granted.

*An appropriate order will be issued.*

---

[6] A violation of the Hobbs Act is a substantive offense, separable from a Hobbs Act conspiracy. *United States v. Jacobs,* 451 F.2d 530, 534-535 (5th Cir. 1971), cert. denied 405 U.S. 955 (1972); *Carbo v. United States,* 314 F.2d 718, 733 (9th Cir. 1963), cert. denied 377 U.S. 953 (1964). Nevertheless, our conclusions regarding the preclusive effect of petitioner's conviction on the Hobbs Act count make it unnecessary for us to consider whether petitioner's conviction on the conspiracy count would have the same preclusive effect.