NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**ROBERT A. BERMAN,**
*Petitioner,*

v.

**DEPARTMENT OF THE INTERIOR,**
*Respondent.*

---

2010-3052

---

Petition for review of the Merit Systems Protection Board in case no. DC0752090294-I-1.

---

Decided: November 7, 2011

---

ROBERT A. BERMAN, Vienna, Virginia, pro se.

JOSHUA E. KURLAND, Trial Attorney, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

---

Before BRYSON, MAYER, and GAJARSA, *Circuit Judges*.

PER CURIAM.

Robert A. Berman ("Berman") petitions for review of the final decision of the Merit Systems Protection Board ("Board") denying his request for reconsideration of the Board's decision affirming his removal from federal employment. *See Berman v. Dep't of Interior*, Docket No. DC-0752-09-0294-I-1, slip op. at 2 (M.S.P.B. Oct. 30, 2009) ("*Final Order*"). For the reasons stated below, we *vacate* and *remand*.

## BACKGROUND

The facts underlying this matter are set forth in numerous published opinions of the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit. *See United States v. Project on Gov't Oversight*, 454 F.3d 306 (D.C. Cir. 2006) ("*POGO I*"); *United States v. Project on Gov't Oversight*, 484 F. Supp. 2d 56 (D.D.C. 2007) ("*POGO II*"); *United States v. Project on Gov't Oversight*, 525 F. Supp. 2d 161 (D.D.C. 2007) ("*POGO III*"); *United States v. Project on Gov't Oversight*, 526 F. Supp. 2d 62 (D.D.C. 2007) ("*POGO IV*"); *United States v. Project on Gov't Oversight*; 531 F. Supp. 2d 59 (D.D.C. 2008) ("*POGO V*"); *United States v. Project on Gov't Oversight*, 543 F. Supp. 2d 55 (D.D.C. 2008) ("*POGO VII*"); *United States v. Project on Gov't Oversight*, 572 F. Supp. 2d 73 (D.D.C. 2008) ("*POGO VIII*"); *United States v. Project on Gov't Oversight*, 616 F.3d 544 (D.C. Cir. 2010) ("*POGO IX*"). Nevertheless, a brief recitation of the facts and procedural posture is in order.

## I.

Berman was employed as an Economist, GS-0110-15, in the Office of the Secretary at the United States De-

partment of the Interior ("Agency"). Beginning in 1994, Berman was contacted by representatives of the Project on Government Oversight ("POGO"), a non-profit organization "dedicated to remedying systematic abuses of power, mismanagement, and subservience of the federal government to special interests." *POGO IX*, 616 F.3d at 546. Over the next few years, Berman had between twenty and thirty telephone conversations with POGO's executive director, Danielle Brian ("Brian"), discussing oil royalty issues. In his conversations with POGO, Berman explained how oil royalties were underpaid and advised Brian on how to draft Freedom of Information Act ("FOIA") requests for government documents. Based in part on these conversations, POGO filed two *qui tam* actions in the United States District Court for the Eastern District of Texas. Specifically, POGO alleged that major oil companies violated the False Claims Act, 31 U.S.C. § 3729, by undervaluing the oil they extracted from federal and Indian lands and then underreporting and underpaying the oil royalties they owed to the Mineral Management Service of the U.S. Department of the Interior. After POGO filed suit, the United States intervened and entered into settlements with the oil company defendants that resulted in a recovery of $440 million.

Prior to filing the *qui tam* actions, Brian asked Berman whether he wanted to join the suits as a co-relator. Berman declined POGO's offer, but he subsequently entered into an agreement with POGO which provided that he would receive one-third of any money POGO recovered through the litigation. On November 2, 1998, POGO sent Berman a letter enclosing a $383,600 check. The face of the check indicated that it was a "Public Service Award," and the accompanying letter explained that POGO was awarding it to Berman for his "decade-long public-spirited work to expose and stop the oil com-

panies' underpayment of royalties for the production of crude oil on federal lands." *Pogo IX*, 616 F.3d at 546.

## II.

On January 21, 2003, the Justice Department filed a civil complaint alleging, *inter alia*, that Berman and POGO violated 18 U.S.C. § 209(a) in connection with the $383,600 payment. Section 209(a) states, in relevant part:

> Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government . . . from any source other than the Government of the United States, except as may be contributed out of the treasury of any State, county, or municipality; or

> Whoever . . . makes any contribution to, or in any way supplements, the salary of any such officer or employee under circumstances which would make its receipt a violation of this subsection--

> Shall be subject to the penalties set forth in [18 U.S.C. § 216].

18 U.S.C. § 209(a). In addition to criminal penalties, Section 216 authorizes the Attorney General to bring a civil action, as he did with Berman and POGO, against "any person who engages in conduct constituting an offense under . . . [18 U.S.C. § 209]." *Id.* at § 216(b).

The government moved for summary judgment on the Section 209(a) count, and the motion was granted by the district court. The District of Columbia Circuit reversed, finding a "genuine dispute as to whether POGO issued the check as compensation for [Berman's] government

service." *POGO I*, 454 F.3d at 306. Citing new evidence, the government made a second motion for summary judgment, but it was denied on the basis of a "genuine issue of material fact concerning the scope (if any) of Berman's official responsibilities concerning oil royalty matters." *POGO III*, 525 F. Supp. 2d at 166, 169-70.

On February 11, 2008, a jury found POGO and Berman liable for violating Section 209(a). Thereafter, the district court denied the defendants' motions for a new trial or, alternatively, for judgment as a matter of law. *POGO VII*, 543 F. Supp. 2d at 69. Berman and POGO appealed, and on August 3, 2010, the District of Columbia Circuit reversed in part, holding that intent was an essential element of a Section 209(a) violation. *POGO IX*, 616 F.3d at 549-56. In its opinion, the District of Columbia Circuit noted that the intent element "may . . . be necessary to distinguish between lawful and unlawful public service awards that nonprofit organizations bestow upon public servants." *Id.* at 551. The court went on to note that "the Department of Justice has consistently held that [Section 209(a)] *applies only to payment made with the intent to compensate for Government services* and that the requisite intent may not be inferred from the bestowal upon a public official of a bona fide award for public service or other meritorious achievement." *Id.* at 551 (quoting Letter from David H. Martin, Director, OGE, to a Designated Agency Ethics Official (July 26, 1983), 1983 WL 31714, at \*1). In this case, "[t]he district court permitted—but did not require—the jury to consider *what* services POGO subjectively intended the payment to be for, and what services Mr. Berman believed that the payment was for," but it did not "permit the jury to consider whether the defendants intended the payment to be for Berman's *Government* service." *Id.* at 556 (internal quotation marks omitted). The case was therefore re-

manded with instructions to vacate the jury's verdict.  *Id.* at 566.

III.

On June 11, 2008, after the jury verdict but prior to the District of Columbia Circuit's reversal, the Agency proposed to remove Berman from employment.  The Notice of Proposal to Remove charged Berman with "Misconduct," with a specification of "[u]sing public office for private gain in accepting $383,600 from a private organization in violation of 18 U.S.C. 209(a) for performing your official duties."  The proposing official, Benjamin Simon, recommended a penalty of removal.

On January 13, 2009, Christine Baglin ("Baglin"), a Director in the Agency's Office of Policy Analysis, found the charge of misconduct proven by a preponderance of the evidence.  In her Decision to Remove, Baglin reiterated the misconduct charge detailed in the proposal. Addressing Berman's inquiries as to why the Agency waited until 2008 to take action, Baglin wrote:

> I believe that it would have been premature to take disciplinary action while the Department of Justice and the Inspector General were investigating your actions.  The 2008 jury trial and verdict were the culmination of the investigation and yielded a definitive verdict from an independent factfinder [sic].  The determination made by the court proceeding was that you improperly received money based on your government work and because of your status as federal employee.  Therefore, in light of the federal court decision, I believe a lot, in fact, has changed.

RA 45.  Baglin then sustained the penalty of removal despite the presence of mitigating factors: although

Berman had 26 years of federal service, no prior disciplinary record, and a history of "superior" ratings, Baglin deemed the "egregiousness of [Berman's] conduct" so severe as to negate any ameliorative effect. RA 47.

Berman appealed the Agency's decision to the Board. On August 18, 2009, an administrative judge issued an initial decision affirming the Agency's action. *Berman v. Dep't of the Interior*, Docket No. DC-0752-09-0294-I-1, slip op. at 1 (M.S.P.B. Aug. 18, 2009) ("*Initial Decision*"). Applying collateral estoppel, the administrative judge found that the Board was precluded from reviewing the district court's determination that Berman violated Section 209(a), notwithstanding Berman's then-pending appeal to the District of Columbia Circuit. *Id.* at 6-8. The administrative judge then found that Berman "had an intent to use his public office for private gain." *Id.* at 10. The administrative judge next found that Berman failed to prove his affirmative defenses of harmful procedural error and agency retaliation for disclosures protected by the Whistleblower Protection Act. *Id.* at 10-19. Finally, the administrative judge determined that Berman's penalty was neither disparate nor unreasonable. *Id.* at 19-24. Berman then filed a petition for review requesting that the Board reconsider the administrative judge's initial decision.

The Board grants a petition for review only where the claimant presents new or previously unavailable evidence or the administrative judge makes an error interpreting a law or regulation. 5 C.F.R. § 1201.115. In this case, the Board found that Berman failed to prove either. *Final Order* at 1. Accordingly, Berman's petition for review was denied, and the administrative judge's initial decision became final. *Id.* at 2.

Berman appealed the Board's decision to this court, and the parties agreed to stay the appeal pending the outcome of Berman's appeal of the related civil verdict. The District of Columbia Circuit's mandate in that appeal has now issued, affirming in part, reversing part, and remanding to the United States District Court for the District of Columbia with instructions to vacate the jury's verdict and to conduct further proceedings in accordance with the opinion in *POGO IX*. Various motions are currently pending in the district court proceeding, but no new judgment has been entered.

This court has jurisdiction over Berman's petition pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

### STANDARD OF REVIEW

Our review of the Board's decision is limited. By statute, we must affirm the Board's holding unless we find it to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Barrett v. Soc. Sec. Admin.*, 309 F.3d 781, 785 (Fed. Cir. 2002). Consistent with that standard of review, we review de novo the availability of collateral estoppel, and we review the Board's application of that doctrine for abuse of discretion. *See Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1360 (Fed. Cir. 2006).

### DISCUSSION

### I.

As his principal argument on appeal, Berman argues that the Board's order must be reversed because it was

premised on the partially-reversed judgment in *United States v. Project on Government Oversight*, No. 03-0096 (D.D.C. Feb. 11, 2008) (ECF 99). In response, the Agency argues that the "misconduct" charge levied against Berman did not require violation of 18 U.S.C. § 209(a) and, even if it did, the Board independently determined that Berman violated the statute. Respondent Br. 19-23. We begin by analyzing the Agency's charge against Berman.

### A.

The Notice of Proposal to Remove states, under the heading "Charge – Misconduct":

> *Specification*: Using public office for private gain in accepting $383,600 from a private organization in violation of 18 U.S.C. 209(a) for performing your official duties.
>
> As discussed above, you accepted payment of $383,600 from POGO for performing your official duties. This conduct was found to be in violation of 18 U.S.C. § 209 as found by a jury verdict in February 2008 and upheld by the District Court judge presiding over the case on April 10, 2008. Your acceptance of such funds is unacceptable ethical behavior for a high ranking government employee and your behavior was found to violate a federal statute.
>
> Accordingly I am proposing the penalty of removal for your misconduct based on my consideration of the factors set forth below.

RA 39. Similarly, the Decision to Remove states that "[t]he Proposal lays out a charge of misconduct, with the specification of using public office for private gain in accepting $383,600 from a private organization in viola-

tion of 18 U.S.C. 209(a) for performing your official duties." RA 44.

When, as here, general charging language is used, i.e., "misconduct," due process requires the Board to "look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action." *Lachance v. Merit Sys. Prot. Bd.*, 147 F.3d 1367, 1371-72 (Fed. Cir. 1998) (citing *Huisman v. Dep't of Air Force*, 35 M.S.P.R. 378, 380-81 (1987)). Thus, "where the specification contains the only meaningful description of the charge . . . the agency must prove what it has alleged in the specification." *Id.* Consistent with that requirement, the Board reviewed the Notice of Proposal to Remove and concluded that the sole specification underlying the charge was "[u]sing public office for private gain in accepting $383,600 from a private organization in violation of 18 U.S.C. 209(a) for performing your official duties." *Initial Decision* at 4. The Board then analyzed the violation of Section 209(a) as an element of the charged misconduct. *See id.* at 5-8; Hr'g Tr. 32:17-21. We agree with the Board that violation of Section 209(a) is an element of the charged misconduct.[1]

---

[1] The Agency's "Prehearing Submission" to the Board characterized the issue before the Board as "[w]hether the Board should affirm the Agency's decision to remove [Berman] for being found by a court to have violated 18 U.S.C. § 209(a)." Although we do not interpret the specification as explicitly predicated upon the jury's finding of liability, we interpret the Agency's "Prehearing Submission" as judicially estopping the Agency from arguing that violation of Section 209(a) was not an element of the charged misconduct. *See Trustees in Bankruptcy of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353-57 (Fed. Cir. 2010); *Key Pharms. v. Hercon Labs Corp.*, 161 F.3d 709, 714-15 (Fed. Cir. 1998).

B.

Having properly determined that violation of 18 U.S.C. § 209(a) was an element of the charged offense, the Board relied on the preclusive effect of the district court litigation to find that Berman violated the statute. *Initial Decision* at 7-8. The Board similarly relied on the district court's decision to find that Berman received actual private gain. *Id.* at 7 (citing *Mann v. Dep't of Health & Hum. Servs.*, 78 M.S.P.R. 1, 8 (1998)). But the application of collateral estoppel is dependent upon a final judgment in the earlier matter. 18A Charles Alan Wright et al., Federal Practice and Procedure § 4432 (2d ed. 2002). Where a judgment—or a part thereof—is reversed or vacated on appeal, there is no final judgment as to issues not actually resolved by the appellate court. *Id.* Therefore, the matters reversed or vacated are not subject to preclusion until such time as a new judgment is entered. *See, e.g.*, *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 328-29 (4th Cir. 2004) (reviewing the preclusive effect of a district court judgment affirmed in part and reversed in part by the District of Columbia Circuit in a parallel litigation). Critically, we review the preclusive effect of a prior judgment as of the time the case in which preclusion was asserted is before this court. *See, e.g.*, *Lulirama Ltd. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 875 n.2 (5th Cir. 1997).

In *POGO IX*, the District of Columbia Circuit affirmed the district court's denial of the defendants' post-trial motions for judgment as a matter of law or, in the alternative, for a new trial, pertaining to jury instructions regarding lump-sum payments and the scope of Berman's duties. 616 F.3d at 560-62. The court also affirmed the district court's interpretation of the relevant penalty provision, 18 U.S.C. § 216(b). *Id.* at 562-66. But it reversed the district court's judgment as to POGO's and

Berman's liability based on the district court's failure to properly instruct the jury on the issue of intent. *Id.* at 548-60. Although the District of Columbia Circuit remanded for "further proceedings consistent with [its] opinion," *id.* at 566, it implicitly ordered a new trial by declining to reach evidentiary disputes and challenges to the sufficiency of the evidence "[b]ecause it is not possible to predict what the record will look like after a new trial," *id.* at 562 n.20. Indeed, the court remanded on the issue of Berman's liability for breach of fiduciary duty "[b]ecause that conclusion appears to have been largely premised on Berman's now-vacated liability under §209(a) . . . ." *Id.* at 562 n.20. Therefore, absent an independent determination of Berman's liability by the Board, we must vacate the Board's final decision and remand for additional proceedings. *See Parikh v. Dep't of Veterans Affairs*, 110 M.S.P.R. 295, 301, 305 (2008) (vacating and remanding for additional proceedings following erroneous application of collateral estoppel).

The Agency argues that the Board did, in fact, make an independent determination that Berman violated Section 209(a). Respondent's Br. 21-22. We disagree. The record indicates that the Board denied a motion by Berman to compel discovery, stating:

> [I]t became clear in the conference call that the information [Berman] sought was information relevant to the underlying charges which were involved in the civil action filed against [Berman] by the Department of Justice. As previously discussed with the parties, and summarized in the summary of prehearing conference, the doctrine of collateral estoppel appears to be applicable to this appeal. *Accordingly, the merits of the underlying action are not at issue before the Board. Rather, the hearing in this appeal is limited to a penalty*

> *determination.* [Berman] was unable to articulate
> . . . how such information may be relevant to the
> penalty determination. Accordingly, it is my rul-
> ing that no additional discovery will be ordered.

Notice and Order Regarding Discovery (June 17, 2009) (emphasis added). And during the hearing, the administrative judge sustained the Agency's objection to testimony regarding the scope of Berman's duties, stating "[w]e're not re-litigating that . . . ." Hr'g Tr. 32:5 – 32:22. Finally, in the *Initial Decision*, the administrative judge stated that "the application of the doctrine of collateral estoppel precludes any review by the Board of the findings of the court that [Berman] violated [Section 209(a)]." *Initial Decision* at 8. Taken individually or in combination, the administrative judge's statements and rulings clearly demonstrate that the merits of a Section 209(a) violation were not before the Board.[2]

## C.

Seeking to salvage its position, the Agency argues that the existing record provides grounds on which the Board could conclude that Berman committed the charged misconduct. Agency Br. 26-27. Because the record was circumscribed based on the preclusive effect of the district court's judgment, we disagree.

First, as noted above, Berman sought to compel discovery of information that the administrative judge found

---

[2] Contrary to Berman's assertion, Reply Br. 1, the Board may adjudicate whether or not a Government employee has engaged in criminal conduct. *See, e.g.*, *King v. Nazelrod*, 43 F.3d 663 (Fed. Cir. 1994) (analyzing the elements of a charge of "theft"); *Wiemers v. Merit Sys. Prot. Bd.*, 792 F.2d 1113 (Fed. Cir. 1986) (upholding removal despite reversal of conviction when removal was based on underlying conduct).

"relevant to the underlying charges." The administrative judge nevertheless denied Berman's motion because "collateral estoppel appears to be applicable" and "the merits of the underlying action are [accordingly] not at issue before the Board." In the absence of collateral estoppel or a valid objection, the administrative judge's refusal to compel discovery of relevant information was an abuse of discretion. *See Baird v. Dep't of Army*, 517 F.3d 1345, 1350-51 (Fed. Cir 2008). Second, the administrative judge repeatedly limited testimony relevant to the underlying Section 209(a) violation. *See, e.g.* Hr'g Tr. 54:22 - 55:18. Indeed, the administrative judge sustained the Agency's objection to questions about the Agency's testimony to Congress regarding the scope of Berman's duties, stating "[w]e're not re-litigating that." Hr'g Tr. 32:5 – 33:14. Absent the preclusive effect of the district court judgment, this general exclusion of evidence relevant to the merits of a Section 209(a) violation was also an abuse of discretion. Having prevailed in circumscribing the record, the Agency cannot now argue that the record is sufficient. *See Frampton v. Dept of Interior*, 811 F.2d 1486, 1489 (Fed. Cir. 1987) (improperly circumscribing presentation of evidence effects denial of petitioner's right to a full and fair hearing). We therefore vacate the Board's final decision and remand for additional proceedings on the issue of Berman's violating 18 U.S.C. § 209(a) *vel non*.

## II.

Berman next challenges the Board's findings on the issue of intent with respect to the offense of using public office for private gain. In its *Initial Decision*, the Board concluded that the charge of using public office for private gain required proof of intent. *Initial Decision* at 8. The Board then identified the relevant *mens rea* as "knowingly and willfully." *Id.* (citing *Burkett v. Gen. Servs. Admin.*,

27 M.S.P.R. 119, 122 (1985)).  Neither party appeals the Board's conclusion that intent is a required element of using public office for private gain; we therefore accept it without comment.

On appeal, Berman argues that the Board failed to consider evidence of his consultation with various advisors before finding that he had the requisite level of intent based on reckless disregard for the truth.  In response, the Agency cites to a statement in the *Initial Decision* that "[a]ll of the evidence and argument offered by both parties has been fully considered."  *Initial Decision* at 5. Conscious that *pro se* petitioners "are not required to file artful, legally impeccable submissions in order to proceed on appeal," *Hilario v. Sec'y, Dep't of Veterans Affairs*, 937 F.2d 586, 589 (Fed. Cir. 1991), we construe Berman as broadly challenging the Board's findings on intent.

The Board's findings on intent were as follows:

As noted above, the appellant's intent may be inferred from evidence of his reckless disregard for the truth or for ascertaining the truth.  In this case, the appellant accepted an extremely large amount of money for providing information to POGO that was obtained through his Federal employment.  It is patently unreasonable for the appellant to have had no inkling that receipt of such a payment may be unlawful.  As noted above, any reasonable person should know that a Federal employee cannot accept an extremely large cash award from an outside entity for performing their job duties.  The appellant could have sought clarification from the [A]gency's ethics officer but he failed to do so.  For all of these reasons, I find that the appellant's failure to ascertain the acceptability of this payment to demonstrate a reckless dis-

regard for ascertaining the truth. Accordingly, I find that the appellant had an intent to use his office for private gain.

*Initial Decision* at 9-10. We identify two errors in the Board's analysis.

First, the Board's finding that Berman "had an intent to use his office for private gain" appears to give significant weight to Berman's merely committing the acts on which the charged misconduct is predicated. But a major purpose of the requiring proof of intent is to distinguish between wrongful conduct and otherwise innocent conduct. *See POGO IX*, 616 F.3d at 550-51 (discussing cases). Consistent with that purpose, we have long-held that the Board must not subsume an intent element into the distinct inquiry of whether the *actus reus* was committed, as the Board apparently did here. *See Naekel v. Dep't of Transp.*, 782 F.2d 975, 978 (Fed. Cir. 1986). Moreover, even if the Board's analysis were otherwise correct, the issue of whether Berman violated Section 209(a) was not before the Board. In the absence of collateral estoppel, the Board's logic therefore fails on its own terms.

Second, we note that good faith reliance on the advice of an attorney or other knowledgeable advisor—although not dispositive—can be highly probative evidence that a defendant lacked willful intent. *E.g.*, *Cheek v. United States*, 498 U.S. 192, 200-02 (1991); *but see Wonsover v. S.E.C.*, 205 F.3d 408, 414-16 (D.C. Cir. 2000) (noting that "[w]illfulness is usually understood to be contextual" and, under the circumstances, inquiries to an attorney and other advisors were inadequate). The Board's precedent is in accord. *See, e.g.*, *Doerr v. Office of Pers. Mgmt.*, 104 M.S.P.R. 196, 199-200 (2006). Indeed, the Board has held that "[w]here an employee acts on the advice of personnel on whom it is reasonable to rely, any violation of law

which results cannot, absent other factors, be considered willful." *Mauro v. Dep't of the Navy*, 35 M.S.P.R. 86, 94 (1987). In contrast, a failure to seek such advice may have limited probative value in the absence of a legal duty to do so. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345-46 (Fed. Cir. 2004) (en banc).

In this case, the record includes evidence that both Berman and POGO consulted with outside counsel, that POGO's attorney contacted the Department of Justice prior to POGO's making the award to Berman, that Berman spoke to POGO's attorney regarding his communications with the Department of Justice, and that Berman believed that the Department of Justice did not object to his receiving the award. *See, e.g.*, Hr'g Tr. 191:21 - 193:1. Berman explicitly introduced this evidence as indicative of his state of mind. Hr'g Tr. 191:12 - 16. Despite the significant probative value of Berman's evidence under Board precedent, the Board failed to discuss it in the *Initial Decision*, and, instead, placed great weight on Berman's failure to consult an Agency ethics advisor.

In short, Berman's challenge is not entirely without merit. We decline to reach the intent issue, however, as the record and the Board's analysis may differ following the proceedings on remand.[3]

### III.

The District of Columbia Circuit has cautioned that a "court asked to accord a judgment preclusive effect may

---

[3] As the District of Columbia Circuit suggested in *POGO IX*, evidence relevant to determining the scope of Berman's duties may also be relevant to the issue of Berman's intent. 616 F.3d at 559 n.17.

be well-advised to stay its own proceedings to await the ultimate disposition of the judgment on appeal." *In re Prof'l Air Traffic Controllers Org.*, 699 F.2d 539, 544 n.18 (D.C. Cir. 1983) (citing Restatement (Second) of Judgments § 15 cmt. b). Precedent does not command such a stay. *Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993). But precedent similarly does not command the application of collateral estoppel. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325 (Fed. Cir. 2003). Prudence may suggest that a court stay a proceeding or otherwise avoid the application of collateral estoppel until the underlying matter is resolved. *See, e.g.*, *Ryan v. Dep't of Homeland Sec.*, 112 M.S.P.R. 43, 45 (2009) (reviewing grounds for dismissal without prejudice). We therefore join the District of Columbia Circuit in its cautionary advice.[4]

## CONCLUSION

We vacate the Board's final decision and remand this case to the Board for further proceedings consistent with this opinion and the District of Columbia Circuit's opinion in *POGO IX*. On remand, the Board is instructed to reopen discovery and to afford Berman a new hearing, including the opportunity for both parties to identify new witnesses and recall witnesses who previously testified.

Costs to Berman.

---

[4] We note that the record in this case includes testimony that, following the jury verdict, the Department of Justice cautioned the Agency to "proceed slowly" because Berman "still may appeal his case." Hr'g Tr. 90:8 – 91:13. Moreover, internal Agency communications indicate awareness that novel and difficult questions of law were implicated by the district court proceedings. B41. The Agency nevertheless failed to object when the administrative judge indicated her intent to apply collateral estoppel, despite being given the opportunity to do so.