T.C. Memo. 2012-226

UNITED STATES TAX COURT

PETER Y. ATKINSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5528-10.　　　　　　　　　Filed August 7, 2012.

<u>Mitchell Bryan</u> and <u>Michael J. Tuchman</u>, for petitioner.

<u>Lawrence C. Letkowicz</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This matter is before the Court on respondent's motion for partial summary judgment under Rule 121.[1]  Respondent determined

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended and in

(continued...)

[*2] deficiencies of $686,535 and $140,049 in petitioner's Federal income tax for 2000 and 2001 (years at issue), respectively. Petitioner, a Canadian citizen and resident, received payments purportedly in exchange for entering into covenants not to compete (noncompete agreements) with United States companies. Petitioner asserts that the payments are not U.S.-source income subject to Federal income tax. Respondent contends that the payments resulted from fraud and are therefore subject to Federal income tax under the Convention and Protocols with Respect to Taxes on Income and Capital, U.S.-Can., Sept. 26, 1980, T.I.A.S. No. 11087 (Convention).

We are asked to decide two issues. First, we consider whether a prior pecuniary fraud conviction precludes petitioner from disputing that one of the payments resulted from fraud. We hold that the collateral estoppel doctrine precludes petitioner from disputing that the payment resulted from fraud. Next, we decide whether a different pecuniary fraud conviction that was vacated bars petitioner from disputing that another payment resulted from fraud. We hold that collateral estoppel does not apply in that circumstance.

---

[1](...continued)
effect for the years at issue, unless otherwise indicated.

[*3]                                Background

The facts have been assumed solely for resolving the pending motion.

Petitioner is a Canadian citizen and resided in Canada at the time he filed the

petition.  Petitioner did not file a Federal income tax return for these years at issue.

I.  Ravelston and Hollinger

Ravelston Corporation Limited (Ravelston) was a privately held foreign

corporation, with its principal office in Toronto, Canada.  Ravelston indirectly held

a controlling interest in Hollinger International, Inc. (Hollinger).  Hollinger was a

publicly traded domestic corporation that owned the Chicago Sun-Times, the Daily

Telegraph in the United Kingdom, the National Post in Toronto, the Jerusalem Post

in Israel, and numerous community newspapers in the United States and Canada.

Conrad Black was Ravelston's chief executive officer and chairman of the

board of directors.  Mr. Black controlled approximately 65% of Ravelston.  John

Arthur Boultbee was Ravelston's chief financial officer and indirectly owned

approximately 1% of Ravelston.  F. David Radler was Ravelston's president and

[*4] indirectly maintained a 14% ownership interest.  Petitioner owned nearly 1% of Ravelston.[2]

Petitioner and Messrs. Black, Radler and Boultbee (collectively, Hollinger's management) provided management services to Hollinger under a written agreement between Hollinger and Ravelston.  Mr. Black served as Hollinger's chief executive officer and chairman.  Mr. Radler served as president, chief operating officer and deputy chairman for Hollinger.  Petitioner and Mr. Boultbee each served as an executive vice president.

II.  Sale of Community Newspapers and Purported Noncompete Agreements

In the late 1990s Hollinger's management anticipated that the rise of the Internet would negatively influence the print newspaper industry's profitability.  They created a plan to sell Hollinger's community newspapers.  From 1998 through 2001 Hollinger's management effected that plan.

The transactions were structured so that each member of Hollinger's management received a share of the proceeds, purportedly in exchange for entering into a noncompete agreement with the purchasers.  The payments were

---

[2]Mr. Radler and Mr. Boultbee each filed petitions with this Court for redetermination of separate deficiency notices.  See Radler v. Commissioner, docket No. 13680-10; Boultbee v. Commissioner, docket No. 13856-10.  Respondent has filed a similar motion for partial summary judgment in Mr. Boultbee's case, a Memorandum Opinion in which is also being filed today.

**[\*5]** not disclosed to the audit committee of Hollinger's board of directors. Those transactions included sales of newspapers to Forum Communications, Inc. (Forum), PMG Acquisition Corporation (PMG) and Community Newspaper Holdings, Inc. (CNHI).[3] Petitioner was paid $15,000 of the proceeds from the Forum and PMG transactions (Forum payment) and $450,000 of the proceeds from the CNHI transaction (CNHI payment)[4] purportedly for noncompete agreements. Petitioner never entered into a written noncompete agreement with Forum or PMG.

Each member of Hollinger's management also entered into a purported noncompete agreement with a Hollinger subsidiary, American Publishing Company (APC). Petitioner was paid $137,500 from APC, purportedly in consideration for his noncompete agreement with APC (APC payment).

---

[3]Respondent determined in the deficiency notice that the tax liabilities stem from five payments for purported noncompete agreements. Respondent contended that petitioner received $1,321,860 from CanWest Global Communications Corp. in 2000 and $246,000 from Osprey Media Group in 2001. The parties stipulated that petitioner did not receive "theft and/or other income" as a result of either payment.

[4]Respondent identifies the CNHI payment as income in the deficiency notice. Respondent does not address the CNHI payment in his motion for partial summary judgment.

[*6] III. Indictment and Prosecution

The United States indicted petitioner and Messrs. Black and Boultbee on numerous charges of fraud.[5] United States v. Black, No. 05-CR-727 (N.D. Ill. filed Aug. 18, 2005). The United States alleged in the superseding information, as pertinent here, that the Forum payment and the APC payment were unauthorized bonuses that violated Hollinger's management's fiduciary duty to Hollinger's shareholders.[6] The United States argued that Hollinger's management characterized the payments as compensation for noncompete agreements because the income would not be taxed by Canadian authorities.

The United States alleged that the Forum payment and the APC payment each were obtained through fraud under distinct legal theories. First, the United States alleged each payment was obtained through pecuniary fraud, which was a scheme of fraudulent appropriation of money to which Hollinger was legally entitled. See 18 U.S.C. sec. 1341 (2006); Black v. United States, 625 F.3d 386,

_____

[5]A fourth Hollinger executive, Mark S. Kipnis, was identified as a defendant in the superseding information. Mr. Kipnis has not filed a petition before this Court.

[6]The Government indicted petitioner and Messrs. Black, Boultbee and Kipnis in a single charging document. For convenience, we will limit our discussion of the superseding information, prosecution and appellate review to petitioner unless otherwise relevant to the petition.

**[\*7]** 388 (7th Cir. 2010). The United States alleged that each payment was also obtained through "honest services" fraud, which was a scheme to deprive Hollinger of its "intangible right of honest services." See 18 U.S.C. sec. 1346; Black, 625 F.3d at 388.

The jury found petitioner guilty of fraud with respect to the Forum payment and the APC payment. The general verdict, however, did not distinguish between the distinct theories of fraud alleged in the superseding information. It was therefore unclear whether the jury found petitioner guilty of pecuniary fraud, honest services fraud or both.

IV. Appellate Review of Convictions

On appeal, the Supreme Court of the United States held in a related opinion issued on the same day that honest services fraud requires proof that an individual solicited or received a bribe or a kickback. See Skilling v. United States, ___ U.S. ___, 130 S. Ct. 2896, 2912 n.9 (2010). The Supreme Court remanded petitioner's case to the United States Court of Appeals for the Seventh Circuit for further consideration. Black v. United States, ___ U.S. ___, 130 S. Ct. 2963 (2010). On remand, the Court of Appeals determined that the bribe or kickback element had not been proven. Black, 625 F.3d at 388. Petitioner's convictions under the honest services fraud theory were therefore vacated. Id.

**[*8]**  Because the verdict was general, the Court of Appeals considered whether the record demonstrated that the Forum payment and the APC payment each were obtained through pecuniary fraud.  Id.  The Court of Appeals determined that the record conclusively established beyond a reasonable doubt that the Forum payment was obtained through pecuniary fraud.  Id.  The Court of Appeals therefore affirmed the pecuniary fraud conviction for the Forum payment (Forum pecuniary fraud conviction).  Id. at 393-394.

The Court of Appeals concluded differently with respect to the APC payment. It reasoned that it was possible (although unlikely) that the jury had convicted petitioner only under the honest services theory.  Id. at 392.  Consequently, the Court of Appeals reversed the fraud conviction predicated on the APC payment and remanded the matter for a new trial on that issue.  Id. at 393-394.  The Government chose not to retry petitioner on the counts that were based on the APC payments. Those counts were dismissed.

V.  Petition and Answer

Respondent issued a deficiency notice in 2010 for the years at issue. Petitioner filed a petition for redetermination.  The amendment to the answer affirmatively pleaded collateral estoppel.  As previously noted, respondent moved for partial summary judgment.

[*9]                                    Discussion

 I. Introduction

The instant motion ultimately relates to the characterization of the Forum

payment and APC payment under the Convention.  The Convention is designed to

prevent double taxation and to avoid fiscal evasion.  N.W. Life Assur. Co. of Can.

v. Commissioner, 107 T.C. 363, 375 (1996).  Because petitioner was a Canadian

citizen residing in Canada, the United States may tax petitioner's income arising in

the United States only to the extent permitted by the Convention.  The parties

agree that under the Convention the United States may not tax the payments if

they were compensation for noncompete agreements.

Respondent argues that income derived from a fraudulent scheme (fraud

income),[7] however, is taxable under the Convention as "other income."  All

income not specifically identified by the Convention is characterized as "other

income."  Convention art. XXII.  "Other income" is taxable by the signatory

country wherein the taxpayer resides unless the income arises in the other

signatory country.  Id.  If the income arises in the other signatory country, both

---

[7]It is well settled that funds derived through embezzlement or other fraudulent schemes are income.  See James v. United States, 366 U.S. 213 (1961); Peters v. Commissioner, 51 T.C. 226, 232 (1968); Davis v. Commissioner, T.C. Memo. 1991-333.

**[\*10]** signatory countries may tax the income. <u>Id.</u> Petitioner's fraud income would therefore be taxable if it arose in the United States. Respondent asks us to hold that the criminal conviction precludes petitioner from disputing that both the Forum payment and the APC payment resulted from fraud and ultimately that each is "other income" within the meaning of the Convention.

In contrast, petitioner argues that the payments are not subject to United States tax because the payments were compensation for personal services performed without the United States.[8] Petitioner avers that he worked and resided in Canada when he received the payments. Respondent does not dispute this. Rather, respondent contends that it has been conclusively determined that each payment was obtained through fraud and was not compensation for personal services. With that in mind, we turn to the instant motion.

---

[8]Petitioner argues that compensation for noncompete agreements do not constitute U.S.-source income. <u>See</u> secs. 861(a)(3), 862(a)(3). This argument relies on the assumption that the income was compensation for bona fide noncompete agreements. Respondent's motion for partial summary judgment seeks to preclude petitioner from disputing the income's characterization as "other income" as opposed to personal service income. We therefore need not reach petitioner's argument that compensation for noncompete agreements is non-U.S.-source income not subject to United States tax.

**[*11]** II. Standard of Review

We now consider whether it is appropriate to grant summary judgment and the applicable standard of review. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). A motion for summary judgment or partial summary judgment will be granted if the pleadings and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The moving party has the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See, e.g., Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002). The party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial and may not rely merely on allegations or denials in the pleadings. Rule 121(d); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Because summary judgment decides against a party before trial, we grant such a remedy cautiously and sparingly, and only after carefully ascertaining that the requirements for summary judgment have

**[\*12]** been met.  <u>P & X Mkts., Inc. v. Commissioner</u>, 106 T.C. 441, 443 (1996), <u>aff'd</u> <u>without published opinion</u>, 139 F.3d 907 (9th Cir. 1998); <u>Boyd Gaming Corp. v. Commissioner</u>, 106 T.C. 343, 346-347 (1996).

III.  <u>Collateral Estoppel</u>

We now consider whether petitioner is barred under the collateral estoppel doctrine from disputing that the Forum payment and the APC payment were obtained through fraud.  Collateral estoppel has been applied in Federal tax cases to preclude a party from relitigating previously decided issues of fact or law necessary to a court's prior judgment.  <u>Commissioner v. Sunnen</u>, 333 U.S. 591, 598 (1948); <u>Meier v. Commissioner</u>, 91 T.C. 273, 286 (1988) (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979) and <u>Montana v. United States</u>, 440 U.S. 147, 153-154 (1979)); <u>see also</u> <u>Koprowski v. Commissioner</u>, 138 T.C. ___, ___ (slip op. at 12) (Feb. 6, 2012) (citing <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).  Collateral estoppel operates with respect to issues of fact, issues of law and mixed issues of fact and law.  <u>Blanton v. Commissioner</u>, 94 T.C. 491, 495 (1990).  Its application conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.  <u>Montana</u>, 440 U.S. at 153-154; <u>Meier v. Commissioner</u>, 91 T.C. at 282-284.

**[\*13]** Six conditions must be met for collateral estoppel to apply. See generally Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990). First, there must be a final judgment rendered by a court of competent jurisdiction. Id. Second, the issue in the second suit must be identical with the one decided in the first suit. Id. Third, collateral estoppel may be asserted only against parties (or their privies) to the prior judgment. Id. Fourth, the parties must actually have litigated the issues, and the resolution of these issues must have been essential to the prior decision. Id. Fifth, the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Id. Sixth, there must not be any special circumstances that warrant an exception to its application. Meier v. Commissioner, 91 T.C. at 282-284.

A. Final Judgment

We first consider whether there was a final judgment in the earlier matter by a court of competent jurisdiction. See Berman v. Dep't of Interior, 447 Fed. Appx. 186, 191 (Fed. Cir. 2011); Peck v. Commissioner, 90 T.C. at 166; Gammill v. Commissioner, 62 T.C. 607, 613 (1974). A judgment that has been vacated, reversed, or set aside on appeal is deprived of all conclusive effect, both as res judicata and as collateral estoppel. Kosinski v. Commissioner, 541 F.3d 671, 676-677 (6th Cir. 2008), aff'g T.C. Memo. 2007-173. Where a portion of the judgment

**[\*14]** is reversed or vacated on appeal, there is no final judgment as to issues not actually resolved by the appellate court. <u>Berman</u>, 447 Fed. Appx. at 191. Therefore, a new judgment must be entered regarding the matters reversed or vacated. <u>Id.</u> (citing <u>In re Microsoft Corp. Antitrust Litig.</u>, 355 F.3d 322, 328-329 (4th Cir. 2004)).

On remand from the Supreme Court, the Court of Appeals affirmed the Forum pecuniary fraud conviction but vacated the conviction related to the APC payment. The Forum pecuniary fraud conviction then became final when the Supreme Court denied petitioner's petition for writ of certiorari.

The conviction related to the APC payment was vacated and the matter was remanded to the District Court for a new trial. The Government did not retry petitioner on the counts that were based on the APC payments.[9] Thus, there was no final judgment.

Respondent acknowledges that the conviction related to the APC payment was vacated yet argues that the Court of Appeals found that the Government had proven pecuniary fraud by a preponderance of the evidence. The Court of Appeals viewed the record to be "certainly sufficient to prove a pecuniary fraud" and

---

[9]The Court takes judicial notice that the trial court granted the Government's oral motion to dismiss the APC counts. <u>See</u> <u>United States v. Black</u>, No. 05-CR-727 (N.D. Ill. filed Feb. 3, 2011).

**[*15]** observed that the sentencing court may consider any conduct proven by a preponderance of the evidence. Black, 625 F.3d at 391. Neither observation, however, negates the final judgment requirement. Nor is a finding during criminal sentencing entitled to preclusive effect. See Kosinski v. Commissioner, 541 F.3d at 677-679.

Consequently, there was no final judgment with respect to the conviction related to the APC payment and collateral estoppel cannot be applied. Because of our holding, we will not consider the remaining elements with respect to the APC payment. We still must analyze whether collateral estoppel applies regarding the Forum payment.

B. Identical Issues

We next consider whether the issue in this case regarding the Forum payment is identical in all respects to the issue decided in the criminal matter. Commissioner v. Sunnen, 333 U.S. at 599-600; Peck v. Commissioner, 90 T.C. at 166-167. We are mindful that a prior conviction precludes a party in a later civil suit from contesting facts necessarily established in the criminal proceeding. See Compton v. Ide, 732 F.2d 1429, 1434 (9th Cir. 1984), abrogated on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987). In the case of a criminal conviction based on a guilty verdict, issues essential to

**[\*16]** that verdict are regarded as having been determined by the judgment.  <u>Blanton v. Commissioner</u>, 94 T.C. at 496.  What issues were adjudicated in the prior proceeding is a question of law.  <u>Id.</u>

Respondent contends that the Forum pecuniary fraud conviction required a finding that the payment was obtained through fraud and not in exchange for a bona fide noncompete agreement.  We agree.  The conviction required a finding that petitioner fraudulently appropriated Hollinger's money.  The Court of Appeals found that it was "decisively unbelievable" that the payment was bona fide compensation and concluded that the "only rational explanation" was that the Forum payment constituted "proceeds of a plain-vanilla pecuniary fraud."  <u>Black</u>, 625 F.3d at 393.  Here, the issue is whether the payment was compensation for a noncompete agreement or the result of unlawful conduct.  The finding of fraud in the criminal matter is the same issue.[10]  This element is satisfied.

---

[10]We note that it can be difficult to ascertain from a jury's general verdict exactly what facts were found as a predicate to that verdict.  <u>See</u> <u>Blanton v. Commissioner,</u> 94 T.C. 491, 496 (1990).  Here, the parties agree on most of the underlying facts and the appellate opinion summarizes the findings of fact necessary to the Forum pecuniary fraud conviction.  Thus, an examination of the record in the criminal proceeding is not necessary in this circumstance.

**[\*17]** C.  Identical Parties

We next consider whether petitioner was the same party as in the criminal matter.  The parties agree and the record supports that petitioner was the defendant in the criminal matter.  This element is satisfied.

D.  Issue Actually Litigated and Essential to the Prior Decision

We now decide whether the issue was actually litigated and essential to the prior criminal conviction.  An issue is decided if the issue's determination was necessary to support the judgment entered in the prior proceeding.  See Blanton v. Commissioner, 94 T.C. at 496.  The pecuniary fraud conviction required a finding that the payment to petitioner resulted from a fraudulent scheme to deprive Hollinger.  The jury had to find that petitioner stole the company's rightful property and reject petitioner's contention that the payment was consideration for a valid noncompete agreement.  Black, 625 F.3d at 393.  This element is satisfied.

E.  Controlling Facts and Applicable Principles Remain Unchanged

We next consider any changes to the controlling facts or legal principles since the criminal matter.  The parties do not contend that there have been, nor are we aware of, any changes to the controlling facts or the legal principles underlying the Forum pecuniary fraud conviction.  This element is satisfied.

**[*18]** F.  Special Circumstances Exception

Our final consideration is whether any special circumstances warrant an exception to applying collateral estoppel.  Petitioner has not argued that any apply.  Nor do we perceive any reason that collateral estoppel is inapplicable in this situation.  Petitioner had a great incentive to fully litigate this issue in the criminal matter.  The appellate review confirms that the issue was established and the jury so found.  This element is satisfied.

IV.  Conclusion

In toto, we hold that the collateral estoppel doctrine applies to the Forum pecuniary fraud conviction.  We shall grant respondent's partial summary judgment motion only as to the Forum payment.  Accordingly, petitioner is barred from disputing that the Forum payment was the result of fraud.  We decline, however, to apply issue preclusion to the APC payment because there was no final judgment establishing that the payment was the result of fraud.  We make no further determination at this stage on the Convention's application to each payment.  A trial will be scheduled in due course to resolve the outstanding issues.

**[\*19]**  In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.