Justice Ginsburg
delivered the opinion of the Court.
In Skilling v. United States, decided today, ante, p. 358, we vacated the Court of Appeals judgment and remanded the case because the indictment rested, in part, on an improper construction of the “honest services” component of the federal ban on mail fraud, 18 U. S. C. §§ 1341, 1346. A similar infirmity is present in this case. Here, too, the Government and trial court advanced an interpretation of § 1346 rejected by the Court’s opinion in Skilling. Nevertheless, the Government urges, the convictions of the defendants below, petitioners here, should be affirmed for an independent reason. At trial, the Government pursued alternative theories: (1) money-or-property fraud; and (2) honest-services fraud. To pinpoint whether the jury based its verdict on money-or-property fraud, or honest-services fraud, or both, the Government proposed special interrogatories to accompany the *468 verdict. The defendants resisted, preferring an unelaborated general verdict, and the Government ultimately acquiesced in that standard form of submission.
The Court of Appeals held that the defendants, by opposing the Government-suggested special interrogatories, forfeited their objection to the honest-services-fraud instructions given to the jury. 530 F. 3d 596, 603 (CA7 2008). We reverse that ruling. A criminal defendant, we hold, need not request special interrogatories, nor need he acquiesce in the Government’s request for discrete findings by the jury, in order to preserve in full a timely raised objection to jury instructions on an alternative theory of guilt.
I
Petitioners Conrad Black, John Boultbee, and Mark Kipnis, as well as Peter Atkinson,[1] (collectively, Defendants) were leading executives of Hollinger International, Inc. (Hollinger), a publicly held U. S. company that, through subsidiaries, owned newspapers here and abroad. In 2005, the Government indicted Defendants on multiple counts, of prime concern here, three counts of mail fraud in violation of §§1341 and 1346.[2] Two theories were pursued by the Government on each mail-fraud count. The Government charged that (1) Defendants stole millions from Hollinger by fraudulently paying themselves bogus “noncompetition fees”; and that (2) by failing to disclose their receipt of those fees, Defendants deprived Hollinger of their honest services as managers of the company. App. to Pet. for Cert. 24a-54a.
*469 At the close of the four-month trial, the U. S. District Court for the Northern District of Illinois instructed the jury, discretely, on the theft-of-money-or-property and honest-services-deprivation theories advanced by the Government. Id., at 235a. As to the latter, the District Court informed the jury, over Defendants’ objection, that a person commits honest-services fraud if he “misuse[s] his position for private gain for himself and/or a co-schemer” and “knowingly and intentionally breache[s] his duty of loyalty.” Id., at 235a-236a.
Before jury deliberations began, the Government asked the District Court to employ a special-verdict form, which would reveal, in the event that the jury voted to convict on a mail-fraud count, the theory or theories accounting for the verdict — money-or-property fraud, honest-services fraud, or both. See App. 430a.[3] Defendants opposed the Government-proposed special interrogatories and urged, instead, standard general-verdict forms. Id., at 432a. Comprehending, however, that in the event of a guilty verdict, “the jury’s specification of the [mail-]fraud theory might [aid] appellate review,” ibid., Defendants proposed an accommodation: Upon return of a guilty verdict on any mail-fraud count, jurors could be asked to specify the theory on which they relied, id., at 433a.
The Government objected to special interrogatories presented to the jury postverdict, App. to Pet. for Cert. 222a, and the District Court declined to adopt that procedure, id., *470 at 225a.[4] When the court rejected postverdict interrogatories, the Government represented that it would not object to submission of the mail-fraud counts for jury decision by general verdict. Id., at 228a. The jury returned general verdicts of “guilty” on the three mail-fraud counts;[5]
[6]it also found defendant Black guilty of obstruction of justice in violation of 18 U. S. C. § 1512(c)(1), and it acquitted Defendants on all other charges.
On appeal, Defendants urged the invalidity of the jury instructions on honest-services fraud. Under the rule declared by this Court in Yates v. United States, 354 U. S. 298, 312 (1957), a general verdict may be set aside “where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.” Relying on that rule, Defendants urged reversal of their mail-fraud convictions. The Court of Appeals found no infirmity in the honest-services instructions, 530 F. 3d, at 600-602, but further determined that Defendants could not prevail even if those instructions were wrong, id., at 602-603. For this determination, the court homed in on the Government’s special-verdict proposal.
The challenge to the honest-services instructions would have become moot, the court observed, had the jury received special-verdict forms separating money-or-property fraud from honest-services fraud, and reported on the forms that Defendants were not guilty of honest-services fraud. Defendants, the Court of Appeals reasoned, bore responsibility for the obscurity of the jury’s verdict. True, the court acknowledged, it was not incumbent on Defendants to request special verdicts. But by resisting the Government’s proposal for separate findings on money-or-property fraud and *471 on honest-services fraud, and requesting general verdicts instead, the Seventh Circuit concluded, Defendants had “forfeited their objection to the [honest-services] instruction[s].” Id., at 603. Defendants’ suggestion of postverdict interrogatories did not, in the Court of Appeals’ view, overcome the forfeiture, for “[questioning the jurors after they have handed down their verdict is not a good procedure and certainly not one that a district judge is required to employ.” Ibid.[6]
We granted certiorari in this case, 556 U. S. 1234 (2009), along with Skilling v. United States, 558 U. S. 945 (2009), and Weyhrauch v. United States, 557 U. S. 934 (2009), to determine what conduct Congress rendered criminal by proscribing, in § 1346, fraudulent deprivation of “the intangible right of honest services.” We also agreed to consider in this case the question whether Defendants forfeited their objection to the honest-services jury instructions by opposing the Government’s request for special verdicts.
II
We decided in Skilling that §1346, properly confined, criminalizes only schemes to defraud that involve bribes or kickbacks. See ante, p. 358. That holding renders the honest-services instructions given in this case incorrect,[7] and brings squarely before us the question presented by the Seventh Circuit’s forfeiture ruling: Did Defendants, by failing to acquiesce in the Government’s request for special verdicts, forfeit their objection, timely made at trial, to the honest-services instructions?
*472 In addressing this issue, we note first the absence of any provision in the Federal Rules of Criminal Procedure for submission of special questions to the jury. See Stein v. New York, 346 U. S. 156,178 (1953) (“Our own Rules of Criminal Procedure make no provision for anything but a general verdict.”), overruled on other grounds, Jackson v. Denno, 378 U. S. 368 (1964).[8] The sole call for special findings in the Criminal Rules concerns nonjury trials. Rule 23(c) provides: “If a party [in a case tried without a jury] requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion.”
In contrast, the Federal Rules of Civil Procedure provide for jury interrogatories of two kinds: special verdicts, which instruct the jury to return “a special written finding on each issue of fact,” Rule 49(a); and general verdicts with answers to “written questions on one or more issues of fact,” Rule 49(b).[9] Although not dispositive,[10] the absence of a Criminal Rule authorizing special verdicts counsels caution.[11]
*473 While the Criminal Rules are silent on special verdicts, they are informative on objections to instructions. Rule 30(d) “clarifies what. . . counsel must do to preserve a claim of error regarding an instruction.” Advisory Committee’s Notes on 2002 Amendment on Fed. Rule Crim. Proc. 30(d), 18 U. S. C. App., p. 915. The Rule provides: “A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.” Defendants here, it is undisputed, complied with that requirement.[12]
The Court of Appeals, in essence, added a further requirement for preservation of a meaningful objection to jury instructions. It devised a forfeiture sanction unmoored to any federal statute or criminal rule. And it placed in the prosecutor’s hands authority to trigger the sanction simply by requesting a special verdict. See 530 F. 3d, at 603.[13] To boot, *474 the Court of Appeals applied the sanction to Defendants, although they lacked any notice that forfeiture would attend their resistance to the Government’s special-verdict request. There is a Rule designed to ward off judicial invention of the kind present here. Federal Rule of Criminal Procedure 57(b) admonishes: “No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law [or] federal rules . . . unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.”
We hold, in short, that, by properly objecting to the honest-services jury instructions at trial, Defendants secured their right to challenge those instructions on appeal. They did not forfeit that right by declining to acquiesce in the Government-proposed special-verdict forms. Our decision in Skilling makes it plain that the honest-services instructions in this case were indeed incorrect. As in Skilling, ante, at 414, we express no opinion on the question whether the error was ultimately harmless, but leave that matter for consideration on remand.[14]
* * *
For the reasons stated, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 Peter Atkinson is a respondent in support of petitioners who qualifies for relief under this Court’s Rule 12.6. See Letter from Michael S. Schachter to the Clerk of Court (July 29, 2009).

 Section 1341 criminalizes use of the mails to further “any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.” Section 1346 defines the § 1341 term “scheme or artifice to defraud” to include “a scheme or artifice to deprive another of the intangible right of honest services.”

 The Government proposed this language for each defendant on each mail-fraud count:
“If you find the defendant. . . Guilty with respect to [this Count], you must answer the following question by checking the applicable lines.
“With respect to [this Count], we, the jury, find the following has been proven beyond a reasonable doubt (cheek all that apply):
“Defendant engaged in a scheme to defraud [Hollinger] and its shareholders of money or property-
“Defendant engaged in a scheme to defraud [Hollinger] and its shareholders of their intangible right to honest services-.” App. 480a.

 In her years at the bar and on the bench, the trial judge commented, she had “absolutely” never seen the postverdict procedure used. App. to Pet. for Cert. 225a.

 The District Court later granted Kipnis’ motion for judgment of acquittal on one of these counts.

 See, e. g., Jacobs Mfg. Co. v. Sam Brown Co., 19 P. 3d 1259, 1267 (CA8 1994) (“Postverdict interrogatories may imply the jury’s verdict is unjustified and cause the jury to answer the interrogatories in a manner inconsistent with the verdict.”); cf. Yeager v. United States, 557 U. S. 110, 122 (2009) (“Courts properly avoid . . . explorations into the jury’s sovereign space.”).

 The scheme to defraud alleged here did not involve any bribes or kickbacks.

 The absence of a special-verdict or interrogatory provision in the Criminal Rules is hardly accidental. See Skidmore v. Baltimore & Ohio R. Co., 167 F. 2d 54, 70 (CA2 1948) (L. Hand, J., concurring) (“I should like to subject a verdict, as narrowly as was practical, to a review which should make it in fact, what we very elaborately pretend that it should be: a decision based upon law. In criminal prosecutions there may be, and in my judgment there are, other considerations which intervene to make such an attempt undesirable.”).

 Although the special interrogatories requested by the Government in this case have been called “special verdicts” by the parties and the courts below, they more closely resemble what Civil Rule 49(b) describes as “general verdict[s] with answers to written questions.” (Capitalization omitted.)

 See Fed. Rule Crim. Proe. 57(b) (when there is no controlling law, “[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district”).

 By calling for caution, we do not mean to suggest that special verdicts in criminal eases are never appropriate. See United States v. Ruggiero, 726 F. 2d 913, 922-923 (CA2 1984) (in complex Racketeer Influenced and *473 Corrupt Organizations Act cases, “it can be extremely useful for a trial judge to request the jury to record their specific dispositions of the separate predicate acts charged, in addition to their verdict of guilt or innocence”); id., at 927 (Newman, J., concurring in part and dissenting in part) (“[A] District Court should have the discretion to use a jury interrogatory in eases where risk of prejudice to the defendant is slight and the advantage of securing particularized fact-finding is substantial.”).

 The Government asserts that Defendants’ opposition to a special verdict resulted in forfeiture not of their jury-instruction objection, but of their “Yates argument” that any instructional error may “requir[e] reversal.” Brief for United States 52, and n. 21 (internal quotation marks omitted). The Government thus appears to concede that Defendants preserved their instructional challenge, but maintains that they are powerless to ask a court to assess the prejudicial effect of any error they may be able to demonstrate. See Reply Brief 29, n. 10 (on Government’s view, “[Defendants] could still ‘claim’ they were wrongly convicted, they just could not ask a court to do anything about it”). We see little merit in the Government’s attempt to divorce preservation of a claim from preservation of the right to redress should the claim succeed.

 Rendering the Seventh Circuit’s forfeiture ruling all the more anomalous, at the time the trial court settled on the general-verdict form, the Government was no longer pressing its special-verdict request. See App. to Pet. for Cert. 228a.

 Black contends that spillover prejudice from evidence introduced on the mail-fraud counts requires reversal of his obstruction-of-justice conviction. Brief for Petitioners 47-49. That question, too, is one on which we express no opinion.