In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1856

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT J. CANTRELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07-cr-00044-RL-PRC-1—**Rudy Lozano**, *Judge.*

ARGUED MAY 24, 2010—DECIDED AUGUST 11, 2010

Before EASTERBROOK, *Chief Judge*, and POSNER and
EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. During his lifetime, which spans
almost 70 years, Robert Cantrell accomplished many
things. In a brief on this appeal, his attorney writes that
"Cantrell is an Indiana legend and hero." The brief goes
on (for many pages) noting that Cantrell was a college
baseball and basketball star "feeding assists to Cazzie

Russell"[1] during Michigan's 1964 Final Four run, a long-time teacher, a decorated war veteran, a beloved husband, father, and grandfather, a mentor to needy students, and a well-known public servant in Indiana. Unfortunately, during the past decade, Cantrell also got into some serious trouble. Specifically, a jury found that he committed honest services fraud, using his position in public office to steer contracts to a third party in exchange for kickbacks (a cut of the proceeds from the contracts), in violation of 18 U.S.C. §§ 1341 and 1346. He also committed insurance fraud, deceptively procuring coverage for two of his children, in violation of 18 U.S.C. § 1341. And he filed false income tax returns, failing to report the kickbacks, in violation of 26 U.S.C. § 7206(1). As punishment for his eleven counts of conviction, Cantrell received concurrent sentences of 78 months' imprisonment. The sentence was within the guideline range for his convictions. He now appeals, arguing primarily that his sentence was improper because the district judge applied an incorrect guideline and failed to address his arguments for leniency. Cantrell also preserved a challenge to his four convictions on the honest services fraud counts on the grounds that 18 U.S.C. § 1346 is unconstitutionally vague. No challenge is lodged against the three insurance fraud or the four tax counts under which he was convicted.

---

[1] Russell went on to become the first pick in the 1966 draft and spent twelve seasons in the NBA. He was on the 1970 Knicks team that beat the Lakers in the NBA finals. http://en.wikipedia.org/wiki/Cazzie_Russell (last visited July 6, 2010).

Although this is primarily a sentencing appeal, we begin by briefly addressing Cantrell's preserved argument regarding his § 1346 conviction. While this case was pending on appeal, the Supreme Court decided *Skilling v. United States*, 561 U.S. ___, 2010 WL 2518587 (2010), *Black v. United States*, 561 U.S. ___, 2010 WL 2518593 (2010), and *Weyhrauch v. United States*, 561 U.S. ___, 2010 WL 2518696 (2010), all of which involved the honest services statute. In *Skilling*, the most comprehensive of the three opinions, the Court observed that "[t]he 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling*, 2010 WL 2518587, at *27. Based on this observation and a desire to avoid "taking a wrecking ball to a statute that can be salvaged through a reasonable narrowing interpretation," *id.* at *28 n.44, the Court ultimately held that, "[i]nterpreted to encompass only bribery and kickback schemes, § 1346 is not unconstitutionally vague." *Id.* at *30.

The indictment charged Cantrell with using his position as a public official of North Township of Lake County, Indiana,[2] to secure contracts for Addiction and Family Care, Inc. (AFC), a counseling company owned by an acquaintance, Nancy Fromm, in exchange for a share of

---

[2] North Township is a unit of government (the executive is the township trustee) covering the cities of Hammond, East Chicago, Whiting, Highland, and Munster. It is the second largest township in the state and is responsible for poor relief, among other things. North Township Trustee, http://www.northtownshiptrustee.com (last visited July 6, 2010).

the proceeds from the contracts. By failing to fairly, honestly, and candidly award contracts, Cantrell defrauded North Township and its citizens of their right to his honest services. This was clearly a kickback scheme, so § 1346—even as pared down by *Skilling*—applies to Cantrell. As he presents no other challenge to his convictions, they will not be disturbed.

Cantrell primarily raises two sentencing issues, which involve the district judge's application of U.S.S.G. § 2C1.1 and his consideration of Cantrell's arguments for leniency. Our review of the former is only for plain error, as Cantrell failed to object to the guideline calculations at sentencing. *United States v. Garrett*, 528 F.3d 525, 527 (7th Cir. 2008). As a result, Cantrell must establish that the district judge committed error, that is plain, and that affected his substantial rights. *United States v. Baretz*, 411 F.3d 867, 875 (7th Cir. 2005).

Cantrell claims that the district judge should have applied U.S.S.G. § 2B1.1, entitled, "Larceny, Embezzlement, and Other Forms of Theft; . . .," instead of U.S.S.G. § 2C1.1, entitled, "Offering, Giving, Soliciting, or Receiving a Bribe; . . . Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; . . . ," because his conduct was more akin to simple theft than honest services fraud. He justifies his position almost exclusively on our decision in *United States v. Orsburn*, 525 F.3d 543 (7th Cir. 2008). There, Teresa Orsburn—who was appointed to keep records and write checks by the township's trustee, her husband, Michael—wrote checks to her husband using erasable ink. After the

checks had been deposited and mailed back to the office, Teresa replaced Michael's name with that of a legitimate payee. While *Orsburn* involved nothing more than embezzlement, we held that the defendants could be convicted under 18 U.S.C. § 1341 because the checks were mailed. *Id.* at 545. But we concluded that applying U.S.S.G. § 2C1.1 was erroneous because the defendants' actual conduct did not include bribery or any closely related offense. *Id.* at 546.

In contrast, and as we previously noted, Cantrell did not just steal money from North Township. Rather, he used his position at North Township to steer contracts and renewals to a third party, AFC, which compensated Cantrell with proceeds from the contracts.[3] This is a kickback scheme under 18 U.S.C. § 1346 and therefore comes within the ambit of U.S.S.G. § 2C1.1. *See id.* (explaining that § 1346 was not necessary to the Orsburns' conviction but rather "was devised to deal with people who took cash from third parties (via bribes or kickbacks)").

Nor did Cantrell merely fail to disclose a conflicting financial interest. Our conclusion here is supported by a discussion in *Skilling.* There, the government attempted to preserve the full breadth of the honest services

---

[3] In arguing that his conduct did not involve kickbacks, Cantrell trumpets the fact that the first contract between AFC and North Township predated his employment with the latter. This is immaterial, however, because the renewal contracts, whose terms were engineered by Cantrell, postdated his hiring.

statute by arguing that *McNally v. United States*, 483 U.S. 350 (1987), which spurred Congress to enact § 1346,[4] primarily involved nondisclosure of a conflicting financial interest. The *Skilling* Court rejected that argument, observing that *McNally* actually involved a "classic" kickback scheme:

> A public official, in exchange for routing Kentucky's insurance business through a middleman company, arranged for that company to share its commissions with entities in which the official held an interest. This was no mere failure to disclose a conflict of interest; rather, the official conspired with a third party so that both would profit from wealth generated by public contracts.

*Skilling*, 2010 WL 2518587, at *28 (citations omitted). The conduct here is analogous to the description of *McNally*. Accordingly, we find no error in the application of U.S.S.G. § 2C1.1.

Lastly, we turn to Cantrell's complaint that the district judge failed to consider his arguments for leniency at sentencing. Whether appropriate sentencing procedures were followed is a question of law subject to *de novo* review. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007). Proper procedures include calculating the

---

[4] In *McNally*, the Court held that the scheme at issue did not qualify as mail fraud because § 1341 was limited to the protection of property rights. Congress responded by enacting § 1346, which overruled *McNally*. *See Skilling*, 2010 WL 2518587, at *25.

guidelines range, analyzing the § 3553(a) factors, basing the sentence on accurate facts, and explaining the reasoning. *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008).

Cantrell argues that the district judge failed to address certain factors he cited in favor of a below-guideline sentence—mainly, his age and decorated military career. Cantrell's argument regarding his age is curious, as the district judge explicitly considered that factor:

> I considered the guidelines in this case. I find it to be fair. If anything, I thought of a higher sentence, and I did not go to the higher sentence or deviate higher because of your age. I did take that into consideration.
>
> . . . I also considered before making this sentence the life expectancy of individuals as given by the [actuarial] tables.

The judge also mentioned Cantrell's accomplishments, noting that he "had a good career at the University of Michigan," "got [him]self a doctorate degree," "move[d] up in the school systems," "[was] a fairly good daddy," and "helped individuals." Although the judge did not specifically reference Cantrell's military career, this was not required. *See United States v. Paige*, ___ F.3d ___, 2010 WL 2652455, at *1 (7th Cir. July 6, 2010) (collecting cases supporting the proposition that "we regularly affirm sentences where the district judge does not explicitly mention each mitigation argument raised by the defendant").

The district judge was required, however, to explain why the sentence was appropriate in light of Cantrell's

arguments. And that he did. The judge rejected Cantrell's argument that he was a good father noting that he put his children in harm's way by fraudulently procuring health insurance on their behalf. The judge was also bothered by the length of time (about six years) that Cantrell was involved in criminal activity. And the judge noted that Cantrell's cut from AFC ($68,000) was significant and could have been used by the township to help the poor. Finally, the judge explained that although Cantrell helped several individuals throughout his life, it appeared that, in many cases, he did so to further his own interests. Thus, there is no evidence that the district judge committed procedural error or otherwise acted unreasonably in imposing a within-guideline sentence.

For these reasons, the judgment of the district court is AFFIRMED.

8-11-10