T.C. Memo. 2012-227

UNITED STATES TAX COURT

JOHN ARTHUR BOULTBEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13856-10.                      Filed August 7, 2012.

John Arthur Boultbee, pro se.

Lawrence C. Letkowicz, for respondent.

MEMORANDUM OPINION

KROUPA, Judge:  This matter is before the Court on respondent's motion for

partial summary judgment and petitioner's motion for summary judgment

[*2] under Rule 121.[1]  Respondent determined deficiencies of $686,535 and

$140,049 in petitioner's Federal income tax for 2000 and 2001 (years at issue),

respectively.  Petitioner, a Canadian citizen and resident, received payments

purportedly in exchange for entering covenants not to compete (noncompete

agreements) with United States companies.  Petitioner asserts that his income is not

subject to Federal income tax.  Respondent contends that the payments resulted

from fraud and are therefore subject to Federal income tax under the Convention

and Protocols with Respect to Taxes on Income and Capital, U.S.-Can., Sept. 26,

1980, T.I.A.S. No. 11087 (Convention).

We are asked to decide three issues.  First, we consider whether a prior

pecuniary fraud conviction precludes petitioner from disputing that one of the

payments resulted from fraud.  We hold that the collateral estoppel doctrine

precludes petitioner from disputing that the payment resulted from fraud.  Next, we

decide whether a different pecuniary fraud conviction that was vacated bars

petitioner from disputing that another payment resulted from fraud.  We hold that

collateral estoppel does not apply in that circumstance.  Finally, we consider

whether petitioner is entitled to summary judgment in his favor that his income is

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended and in effect for the years at issue, unless otherwise indicated.

[*3] not subject to U.S. tax under the Convention.  We hold petitioner is not entitled to summary judgment.

## Background

The facts have been assumed solely for resolving the pending motions.  Petitioner is a Canadian citizen and resided in Canada at the time he filed the petition.  Petitioner did not file a Federal income tax return for the years at issue.

## I.  Ravelston and Hollinger

Petitioner was a senior executive of Ravelston Corporation Limited (Ravelston), a privately held foreign corporation, with its principal office in Toronto, Canada.  Ravelston indirectly held a controlling interest in Hollinger International, Inc. (Hollinger).  Hollinger was a publicly traded domestic corporation that owned the Chicago Sun-Times, the Daily Telegraph in the United Kingdom, the National Post in Toronto, the Jerusalem Post in Israel, and numerous community newspapers in the United States and Canada.

Conrad Black was Ravelston's chief executive officer and chairman of the board of directors.  Mr. Black controlled approximately 65% of Ravelston.  Petitioner was Ravelston's chief financial officer and indirectly owned approximately 1% of Ravelston.  F. David Radler was Ravelston's president and

[*4] indirectly maintained a 14% ownership interest. Peter Y. Atkinson owned nearly 1% of Ravelston.[2]

Petitioner and Messrs. Black, Radler and Atkinson (collectively, Hollinger's management) provided management services to Hollinger under a written agreement between Hollinger and Ravelston. Mr. Black served as Hollinger's chief executive officer and chairman. Mr. Radler served as president, chief operating officer and deputy chairman for Hollinger. Petitioner and Mr. Atkinson served as executive vice presidents.

II. Sale of Community Newspapers and Purported Noncompete Agreements

In the late 1990s Hollinger's management anticipated that the rise of the Internet would negatively influence the print newspaper industry's profitability. They created a plan to sell Hollinger's community newspapers. From 1998 through 2001 Hollinger's management effected that plan.

The transactions were structured so that each member of Hollinger's management received a share of the proceeds, purportedly in exchange for agreeing to a noncompete agreement with the purchasers. The payments were not

_____

[2]Mr. Radler and Mr. Atkinson each filed petitions with this Court for redetermination of separate deficiency notices. See Radler v. Commissioner, docket No. 13680-10; Atkinson v. Commissioner, docket No. 5528-10. Respondent has filed a similar motion for partial summary judgment in Mr. Atkinson's case, a Memorandum Opinion in which is also being filed today.

[*5] disclosed to the audit committee of Hollinger's board of directors. Those transactions included sales of newspapers to Forum Communications, Inc. (Forum), PMG Acquisition Corporation (PMG) and Community Newspaper Holdings, Inc. (CNHI).[3] Petitioner was paid $15,000 of the proceeds from the Forum and PMG transactions (Forum payment) and $450,000 of the proceeds from the CNHI transaction (CNHI payment)[4] purportedly for noncompete agreements. Petitioner never entered into a written noncompete agreement with Forum or PMG.

Each member of Hollinger's management also entered into a purported noncompete agreement with a Hollinger subsidiary, American Publishing Company (APC). Petitioner was paid $137,500 from APC, purportedly in consideration for his noncompete agreement with APC (APC payment).

---

[3]Respondent determined in the deficiency notice that the tax liabilities stem from five payments for purported noncompete agreements. Respondent contended that petitioner received $1,321,860 from CanWest Global Communications Corp. in 2000 and $246,000 from Osprey Media Group in 2001. The parties stipulated that petitioner did not receive "theft and/or other income" as a result of either payment.

[4]Respondent identifies the CNHI payment as income in the deficiency notice. Respondent does not address the CNHI payment in his motion for partial summary judgment.

**[\*6]** III.  Indictment and Prosecution

The United States indicted petitioner and Messrs. Black and Atkinson[5] on numerous charges of fraud.  United States v. Black, No. 05-CR-727 (N.D. Ill. filed Aug. 18, 2005).  The United States alleged in the superseding information, as pertinent here, that the Forum payment and the APC payment were unauthorized bonuses that violated Hollinger's management's fiduciary duty to Hollinger's shareholders.[6]  The United States argued that Hollinger's management characterized the payments as compensation for noncompete agreements because the income would not be taxed by Canadian authorities.

The United States alleged that the Forum payment and the APC payment each were obtained through fraud under distinct legal theories.  First, the United States alleged each payment was obtained through pecuniary fraud, which was a scheme of fraudulent appropriation of money to which Hollinger was legally entitled.  See 18 U.S.C. sec. 1341 (2006);  Black v. United States, 625 F.3d 386,

---

[5]A fourth Hollinger executive, Mark S. Kipnis, was identified as a defendant in the superseding information.  Mr. Kipnis has not filed a petition before this Court.

[6]The Government indicted petitioner and Messrs. Black, Atkinson and Kipnis in a single charging document.  For convenience, we will limit our discussion of the superseding information, prosecution and appellate review to petitioner unless otherwise relevant to the petition.

**[\*7]** 388 (7th Cir. 2010). The United States alleged that each payment was also obtained through "honest services" fraud, which was a scheme to deprive Hollinger of its "intangible right of honest services." <u>See</u> 18 U.S.C. sec. 1346; <u>Black</u>, 625 F.3d at 388.

The jury found petitioner guilty of fraud with respect to the Forum payment and the APC payment. The general verdict, however, did not distinguish between the distinct theories of fraud alleged in the superseding information. It was therefore unclear whether the jury found petitioner guilty of pecuniary fraud, honest services fraud or both.

IV. <u>Appellate Review of Convictions</u>

On appeal, the Supreme Court of the United States held in a related opinion issued on the same day that honest services fraud requires proof that an individual solicited or received a bribe or a kickback. <u>See</u> <u>Skilling v. United States</u>, ____ U.S. ____, 130 S. Ct. 2896, 2912 n.9 (2010). The Supreme Court remanded petitioner's case to the United States Court of Appeals for the Seventh Circuit for further consideration. <u>Black v. United States</u>, ____ U.S. ____, 130 S. Ct. 2963 (2010). On remand, the Court of Appeals determined that the bribe or kickback element had not been proven. <u>Black</u>, 625 F.3d at 388. Petitioner's convictions under the honest services fraud theory were therefore vacated. <u>Id.</u>

**[*8]** Because the verdict was general, the Court of Appeals considered whether the record demonstrated that the Forum payment and the APC payment each were obtained through pecuniary fraud. Id. The Court of Appeals determined that the record conclusively established beyond a reasonable doubt that the Forum payment was obtained through pecuniary fraud. Id. The Court of Appeals therefore affirmed the pecuniary fraud conviction for the Forum payment (Forum pecuniary fraud conviction). Id. at 393-394.

The Court of Appeals concluded differently with respect to the APC payment. It reasoned that it was possible (although unlikely) that the jury had convicted petitioner only under the honest services theory. Id. at 392. Consequently, the Court of Appeals reversed the fraud conviction predicated on the APC payment and remanded the matter for a new trial on that issue. Id. at 393-394. The Government chose not to retry petitioner on the counts that were based on the APC payments. Those counts were dismissed.

V. Petition and Answer

Respondent issued a deficiency notice in 2010 for the years at issue. Petitioner filed a petition for redetermination. Respondent moved to dismiss the petition for failure to state a claim. The Court ordered the parties to show cause why the petition should not be dismissed for lack of jurisdiction on the basis that

**[*9]** the petition was untimely. After the parties briefed the issues, the Court denied the motion to dismiss and found that the petition was timely filed. Respondent answered the petition within 60 days of the Court discharging the order to show cause. The answer affirmatively pleaded collateral estoppel. As previously noted, respondent moved for partial summary judgment and petitioner moved for summary judgment.

## Discussion

### I. Introduction

The instant motions ultimately relate to the characterization of the Forum payment and APC payment under the Convention. The Convention is designed to prevent double taxation and to avoid fiscal evasion. N.W. Life Assur. Co. of Can. v. Commissioner, 107 T.C. 363, 375 (1996). Because petitioner was a Canadian citizen residing in Canada, the United States may tax petitioner's income arising in the United States only to the extent permitted by the Convention. The parties agree that under the Convention the United States may not tax the payments if they were compensation for noncompete agreements.

[*10] Respondent argues that income derived from fraudulent schemes (fraud income),[7] however, is taxable under the Convention as "other income." All income not specifically identified by the Convention is characterized as "other income." Convention art. XXII. "Other income" is taxable by the signatory country wherein the taxpayer resides unless the income arises in the other signatory country. Id. If the income arises in the other signatory country, both signatory countries may tax the income. Id. Petitioner's fraud income would therefore be taxable if it arose in the United States.

Respondent asks us to hold that the criminal convictions preclude petitioner from disputing that both the Forum payment and the APC payment resulted from fraud and ultimately that each is "other income" within the meaning of the Convention. In contrast, petitioner asks us to find that the payments are bona fide compensation for noncompete agreements. With that in mind, we turn to the instant motions.

---

[7]It is well settled that funds derived through embezzlement or other fraudulent schemes are income. See James v. United States, 366 U.S. 213 (1961); Peters v. Commissioner, 51 T.C. 226, 232 (1968); Davis v. Commissioner, T.C. Memo. 1991-333.

**[*11]** II.  Standard of Review

 We now consider whether it is appropriate to grant summary judgment and the applicable standard of review.  Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001).  Either party may move for summary judgment upon all or any part of the legal issues in controversy.  Rule 121(a).  A motion for summary judgment or partial summary judgment will be granted if the pleadings and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  The moving party has the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  See, e.g., Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).  The party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial and may not rely merely on allegations or denials in the pleadings.  Rule 121(d); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Because summary judgment decides against a party before trial, we grant such a remedy cautiously and sparingly, and only after carefully ascertaining that the requirements for summary judgment have

**[\*12]** been met.  P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 443 (1996), aff'd without published opinion, 139 F.3d 907 (9th Cir. 1998); Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 346-347 (1996).

III.  Collateral Estoppel

We now consider whether petitioner is barred under the collateral estoppel doctrine from disputing that the Forum payment and the APC payment were obtained through fraud.  Collateral estoppel has been applied in Federal tax cases to preclude a party from relitigating previously decided issues of fact or law necessary to a court's prior judgment.  Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); Meier v. Commissioner, 91 T.C. 273, 286 (1988) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) and Montana v. United States, 440 U.S. 147, 153-154 (1979)); see also Koprowski v. Commissioner, 138 T.C. ____, ____ (slip op. at 12) (Feb. 6, 2012) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).  Collateral estoppel operates with respect to issues of fact, issues of law and mixed issues of fact and law.  Blanton v. Commissioner, 94 T.C. 491, 495 (1990).  Its application conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.  Montana, 440 U.S. at 153-154; Meier v. Commissioner, 91 T.C. at 282-284.

**[*13]** Six conditions must be met for collateral estoppel to apply.  See generally

Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir.

1990).  First, there must be a final judgment rendered by a court of competent

jurisdiction.  Id.  Second, the issue in the second suit must be identical with the one

decided in the first suit.  Id.  Third, collateral estoppel may be asserted only against

parties (or their privies) to the prior judgment.  Id.  Fourth, the parties must actually

have litigated the issues, and the resolution of these issues must have been essential

to the prior decision.  Id.  Fifth, the controlling facts and applicable legal rules must

remain unchanged from those in the prior litigation.  Id.  Sixth, there must not be any

special circumstances that warrant an exception to its application.  Meier v.

Commissioner, 91 T.C. at 282-284.

    A.  Final Judgment

    We first consider whether there was a final judgment in the earlier matter by a

court of competent jurisdiction.  See Berman v. Dep't of Interior, 447 Fed. Appx.

186, 191 (Fed. Cir. 2011); Peck v. Commissioner, 90 T.C. at 166; Gammill v.

Commissioner, 62 T.C. 607, 613 (1974).  A judgment that has been vacated,

reversed, or set aside on appeal is deprived of all conclusive effect, both as res

judicata and as collateral estoppel.  Kosinski v. Commissioner, 541 F.3d 671, 676-

677 (6th Cir. 2008), aff'g T.C. Memo. 2007-173.  Where a portion of the judgment

**[\*14]** is reversed or vacated on appeal, there is no final judgment as to issues not actually resolved by the appellate court. Berman, 447 Fed. Appx. at 191. Therefore, a new judgment must be entered regarding the matters reversed or vacated. Id. (citing In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 328-329 (4th Cir. 2004)).

On remand from the Supreme Court, the Court of Appeals affirmed the Forum pecuniary fraud conviction but vacated the conviction related to the APC payment. The Forum pecuniary fraud conviction then became final when the Supreme Court denied petitioner's petition for writ of certiorari.

The conviction related to the APC payment was vacated and the matter was remanded to the District Court for a new trial. The Government did not retry petitioner on the counts that were based on the APC payments.[8] Thus, there was no final judgment.

Respondent acknowledges that the conviction related to the APC payment was vacated yet argues that the Court of Appeals found that the Government had proven pecuniary fraud by a preponderance of the evidence. The Court of Appeals viewed the record to be "certainly sufficient to prove a pecuniary fraud" and

---

[8]The Court takes judicial notice that the trial court granted the Government's oral motion to dismiss the APC counts. See United States v. Black, No. 05-CR-727 (N.D. Ill. filed Feb. 3, 2011).

**[\*15]** observed that the sentencing court may consider any conduct proven by a preponderance of the evidence.  Black, 625 F.3d at 391.  Neither observation, however, negates the final judgment requirement.  Nor is a finding during criminal sentencing entitled to preclusive effect.  See Kosinski v. Commissioner, 541 F.3d at 677-679.

Consequently, there was no final judgment with respect to the conviction related to the APC payment and collateral estoppel cannot be applied.  Because of our holding, we will not consider the remaining elements with respect to the APC payment.  We still must analyze whether collateral estoppel applies regarding the Forum payment.

B.  Identical Issues

We next consider whether the issue in this case regarding the Forum payment is identical in all respects to the issue decided in the criminal matter.  Commissioner v. Sunnen, 333 U.S. at 599-600; Peck v. Commissioner, 90 T.C. at 166-167.  We are mindful that a prior conviction precludes a party in a later civil suit from contesting facts necessarily established in the criminal proceeding.  See Compton v. Ide, 732 F.2d 1429, 1434 (9th Cir. 1984), abrogated on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987).  In the case of a criminal conviction based on a guilty verdict, issues essential to

**[\*16]** that verdict are regarded as having been determined by the judgment. <u>Blanton v. Commissioner</u>, 94 T.C. at 496. What issues were adjudicated in the prior proceeding is a question of law. <u>Id.</u>

Respondent contends that the Forum pecuniary fraud conviction required a finding that the payment was obtained through fraud and not in exchange for a bona fide noncompete agreement. We agree. The conviction required a finding that petitioner fraudulently appropriated Hollinger's money. The Court of Appeals found that it was "decisively unbelievable" that the payment was bona fide compensation and concluded that the "only rational explanation" was that the Forum payment constituted "proceeds of a plain-vanilla pecuniary fraud." <u>Black</u>, 625 F.3d at 393. Here, the issue is whether the payment was compensation for a noncompete agreement or the result of unlawful conduct. The finding of fraud in the criminal matter is the same issue.[9] This element is satisfied.

---

[9]We note that it can be difficult to ascertain from a jury's general verdict exactly what facts were found as a predicate to that verdict. <u>See</u> <u>Blanton v. Commissioner,</u> 94 T.C. 491, 496 (1990). Here, the parties agree on most of the underlying facts and the appellate opinion summarizes the findings of fact necessary to the Forum pecuniary fraud conviction. Thus, an examination of the record in the criminal proceeding is not necessary in this circumstance.

**[*17]** C.  Identical Parties

We next consider whether petitioner was the same party as in the criminal matter.  The parties agree and the record supports that petitioner was the defendant in the criminal matter.  This element is satisfied.

D.  Issue Actually Litigated and Essential to the Prior Decision

We now decide whether the issue was actually litigated and essential to the prior criminal conviction.  An issue is decided if the issue's determination was necessary to support the judgment entered in the prior proceeding.  See Blanton v. Commissioner, 94 T.C. at 496.  The pecuniary fraud conviction required a finding that the payment to petitioner resulted from a fraudulent scheme to deprive Hollinger.  The jury had to find that petitioner stole the company's rightful property and reject petitioner's contention that the payment was consideration for a valid noncompete agreement.  Black, 625 F.3d at 393.  This element is satisfied.

E.  Controlling Facts and Applicable Principles Remain Unchanged

We next consider any changes to the controlling facts or legal principles since the criminal matter.  The parties do not contend that there have been, nor are we aware of, any changes to the controlling facts or the legal principles underlying the Forum pecuniary fraud conviction.  This element is satisfied.

**[\*18]** F. <u>Special Circumstances Exception</u>

Our final consideration is whether any special circumstances warrant an exception to applying collateral estoppel. Petitioner has not argued that any apply. Nor do we perceive any reason that collateral estoppel is inapplicable in this situation. Petitioner had a great incentive to fully litigate this issue in the criminal matter. The appellate review confirms that the issue was established and the jury so found. This element is satisfied.

We hold that the collateral estoppel doctrine applies to the Forum pecuniary fraud conviction. Accordingly, petitioner is barred from disputing that the Forum payment was the result of fraud. We decline, however, to apply issue preclusion to the APC payment because there was no final judgment establishing that the payment was the result of fraud. We make no further determination at this stage on the Convention's application to each payment. We shall grant respondent's partial summary judgment motion only as to the Forum payment.

IV. <u>Petitioner's Summary Judgment Motion</u>

We now turn to petitioner's motion for summary judgment. Petitioner contends that there is no factual dispute concerning whether the Convention prohibits the United States from taxing his income. Petitioner first argues that this

**[\*19]** contention was established when respondent did not timely file an answer to the amended petition.  We disagree.

The Commissioner has 60 days from the date of service to answer the petition or an amended petition.  Rule 36(a).  Where a motion is made concerning jurisdiction or the sufficiency of a pleading, the time for filing a response to that pleading shall begin to run from the date of service of the order disposing of the motion by the Court, unless the Court directs otherwise.  Rule 25(c).

Respondent answered the amended petition within 60 days of the order discharging the order to show cause.  Thus, respondent's answer was timely.

Petitioner next argues that the payments constituted business proceeds or income from the disposition of property.[10]  See Convention, arts. VII, XIII.  As discussed previously, his conviction establishes that the Forum payment was the result of fraud.  And there is a factual dispute over whether the APC payment and CNHI payment were compensation for noncompete agreements.  Testimony from the criminal matter supports respondent's view that neither payment was bona fide compensation.  In short, a factual dispute exists as to the proper characterization of

---

[10]Article VII of the Convention governs when and how much of the profits of a qualified Canadian enterprise are subject to U.S. Federal income tax.  See N.W. Life Assur. Co. of Can. v. Commissioner, 107 T.C. 363, 375 (1996).  Gains from the alienation of property are taxable only in the signatory country in which the alienator is a resident.  Convention art. XIII(4).

**[*20]** the payments. We therefore hold that petitioner is not entitled to summary judgment.

## V. Conclusion

In toto, we agree with respondent that petitioner's conviction for pecuniary fraud conclusively establishes that the Forum payment was the result of fraud. We decline to grant preclusive effect with respect to the APC payment, however, because there was no final judgment establishing that the APC payment was the result of fraud. We will also deny petitioner's motion for summary judgment because a triable issue of fact exists as to whether the payments are subject to United States tax. A trial will be scheduled in due course to resolve the outstanding issues.

In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

An appropriate order will be issued.