EASTERBROOK, Chief Judge,
with whom BAUER, Circuit Judge, joins,
dissenting.
Lacey Phillips and Erin Hall decided to buy a house together. After one bank *657 turned them down because their income was inadequate, Brian Bowling, a loan broker, told them that they could get a loan by changing what they told the potential lender. Bowling prepared an application that omitted Hall’s name (avoiding a credit check that would have revealed his bankruptcy), attributed the combined income of Hall and Phillips to Phillips alone, doubled that combined income, and falsely claimed that Phillips was a sales manager at a satellite TV business. (Bowling knew that the $90,000 annual income Phillips claimed to earn needed to match the job she claimed to hold; actually she was a hairstylist at J.C. Penney, with an annual income less than $24,000.) Phillips signed the application and an employment verification form. Fremont Investment & Loan extended credit, and the couple bought their home. But they could not keep up the payments, and the mortgage holder foreclosed. A jury convicted them of violating 18 U.S.C. § 1014.
Section 1014 is a simple statute. It reads: “Whoever knowingly makes any false statement ... for the purpose of influencing in any way the action of [any of a long list of entities, including federally insured lenders] shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.” There are just three elements: (1) knowingly making a false statement; (2) to one of the listed entities; (3) for the purpose of influencing that entity. Phillips and Hall concede that the documents contain many false statements, and the jury found that they knew the documents’ contents to be false. The instructions told the jury to acquit defendants if they thought the statements to be true. Defendants concede that Fremont was among the entities listed in § 1014. That leaves “for the purpose of influencing in any way the action” of the lender. The bank fraud statute, 18 U.S.C. § 1344, requires proof of intent to defraud; § 1014 is a different animal, requiring only proof of intent to influence. See United States v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); United States v. Lane, 323 F.3d 568, 582-85 (7th Cir.2003).
Much of the majority opinion reads as if there were an open issue about whether defendants knew that the application contained false representations. Yet Bowling’s testimony would have been irrelevant to that subject, which the jury resolved against defendants on instructions they do not contest. Although the jury did not return a special verdict telling us which falsehoods it had found, there’s no need for special verdicts in criminal cases. See Black v. United States, 561 U.S. 465, 130 S.Ct. 2963, 177 L.Ed.2d 695 (2010). It is enough if the evidence supports any of the ways in which the defendants could have committed the offense. See Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). The evidence shows that defendants’ income was combined (even though Hall’s income would have been unavailable to the lender) and then doubled, and that Phillips’s occupation was misrepresented in order to make the asserted income look plausible. Defendants argue that (a) Bowling told them that it was OK to combine their income, and (b) they did not read the application and thus did not know about the doubling, which Bowling added without telling them (presumably after Phillips signed the form). The jury necessarily rejected proposition (b), which supports the conviction without regard to what Bowling may have said about the propriety of combining incomes.
Bowling’s proposed testimony would have been relevant if the only lie in the application were combining the couple’s income while omitting Hall’s name. Most of the majority’s opinion treats this as the only lie. But it wasn’t. The combined *658 income was doubled and Phillips’s occupation misstated. Given Griffin we must resolve this appeal on the assumption that the jury found that defendants knew about the doubling.
In asking whether the doubling was “for the purpose of influencing” the lender, it is helpful to distinguish two things that Bowling might have said. First, he might have told the defendants that banks do not care whether applicants disclose any income. That is to say, Bowling might have said that applicants can leave the “income” line blank and still get a loan. Or he might have told them that banks do not care about the truth- of the stated income. Banks that syndicate their loans do not lose if the borrowers default — that’s why some didn’t run credit checks on potential borrowers, and why the phrase “liars’ loans” developed — but-they do care about the representation that the income is high enough. Without the representation that the income is sufficient, the loan can’t be syndicated, the original bank would remain on the hook, and the loan therefore would not be made. The distinction I am drawing is between a belief about whether the statement would influence the bank, and whether the truth of the statement would influence the bank.
If Bowling told defendants that banks would make loans with the income line left blank, then his testimony would have been relevant, because it would have tended to show that the defendants did not have “the purpose of influencing” the lender when they put a number, any number, in the income blank. But if Bowling told the defendants only that the bank did not care about the truth of the claimed income, that would not have aided the defense. To the contrary, it would have supported the prosecution by showing that defendants knew that the stated income was vital to the success of the application.
I could not find any suggestion by defense counsel in the district court that Bowling would have testified that he told defendants that Fremont would loan money to applicants who left the income- line blank. Everything that happened in the district court is consistent with the second understanding: defendants wanted to show that, although they knew that banks respond to the income stated on the form, they thought that banks don’t care whether the statements are true. Indeed, the whole idea of a “stated-income loan program” is that the statements matter, even if banks don’t verify their truth. A belief in the propriety of lying is a mistake-of-law defense that a district court may (indeed must) rebuff. All § 1014 requires is proof that the defendants lied in order to influence a bank. And as a proposition of fact the sort of testimony they wanted to offer would have demonstrated the very purpose needed to convict them. They were not prejudiced by its exclusion.
My colleagues see three possibilities: [Bowling] may have said to them: [1] “Your application isn’t illegal.” Or: [2] “Whatever you write on it won’t affect the bank’s lending decision because it doesn’t read the applications — they’re just window dressing.” Or: [3] “combining your income isn’t a misstatement under Fremont’s stated-income loan program.”
Opinion at 656 (bracketed numbers added). Possibility (1) would be a forbidden mistake-of-law defense, just as the majority says. Possibility (3) would be a genuine defense if the application accurately stated the couple’s combined income, but because it doubled the income (and given Griffin we must assume that the verdict reflects a finding that defendants knew this) does not assist defendants. And possibility (2) neglects the vital distinction I have mentioned — the difference between a lender *659 not caring whether there is a number in the income blank, and a lender not caring whether that number is true.
If the lender cares about the level represented as the would-be borrower’s income — as Fremont surely did, in order to syndicate the loan — then the representation is made for the purpose of influencing the lender. Had defendants told the truth, they wouldn’t have received the loan. And Bowling’s testimony, as counsel described it to the district court, would have shown that defendants knew that banks care how much they claim to earn, even if they thought banks don’t care about whether the claim is true. The upshot of my colleagues’ contrary conclusion is that crooked brokers such as Bowling can confer on clients a legal entitlement to obtain loans by deceit. That’s bad economics as well as bad law. It makes it harder to extirpate liars’ loans programs, and it raises the rate of interest that will be charged to honest applicants. These convictions should be affirmed.